CITY 'OF DECATUR

*v.*

ADA FISHER.

EVIDENCE—*medical experts—of the mode of examination.* In an action against a city to recover for an injury to the plaintiff, occasioned, as alleged, by falling through a defective sidewalk, the plaintiff asked the medical witnesses the question, upon an hypothetical statement of the facts as to the manner of the fall and the conduct of the plaintiff thereafter, her mode of treatment, and condition and symptoms, etc., if they would attribute a certain injury to the plaintiff to the fall through the sidewalk, and if such a fall would be sufficient to produce such an injury. Upon objection as to the form of the question, such manner of interrogating physicians called as experts was regarded as very common and almost unavoidable.

APPEAL from the Circuit Court of Macon county; the Hon. ARTHUR J. GALLAGHER, Judge, presiding.

This was an action on the case brought by Ada Fisher against the city of Decatur, to recover damages for an injury received by reason of a defective sidewalk in the city. Upon a second trial in the circuit court, the cause having been previously tried and brought to this court and the judgment of the court below reversed, a verdict and judgment was rendered in favor of the plaintiff for $3483.33. The defendant appeals.

The injury complained of was *prolapsus uteri,* occasioned, as alleged, by falling through the sidewalk into a vault below.

The appellant complains of the form of the following question, suffered by the court to be asked the medical witnesses:

If a young woman—a virgin, 19 years of age—being in good health, and while walking on a sidewalk, about the last of July, 1868, in stepping on the end of one of the planks in the sidewalk, the plank instantly gave way under her, and she was precipitated into a vault beneath the sidewalk, some

16—63D ILL.

six to seven feet deep; that she fell through suddenly, and up to her arm-pits; and in falling, she should strike the small of the back against a solid substance, either a brick wall or a wooden stick across the vault; and she should scrape her back against such wall or stick in going down up to her shoulders; her body inclined backwards; her foot resting on the plank which had tipped down and given way; then if, upon being extricated, she soon after became sick at the stomach, with pains in the head and in the small of the back; that she rode home in a wagon several miles the same evening; became faint and dizzy; that several doses of aconite and arnica were given her; that such symptoms continued for several days, with the addition of acute shooting pains on the left side, running around to the front of her person, in the lower part of her abdomen, and about her private person; that she rode on horseback about two miles; and done some housework; should, in a few days thereafter, have an attack of remittent fever, accompanied with chills; such symptoms of pain still continued, but in an increased degree; then, if she became soon convalescent of her fever; then if, upon physical examination of the patient —made about October the first, of the same year—you should find that she had falling of the womb, would you attribute such falling of the womb to the fall through the sidewalk, or would such a fall be sufficient to produce such falling of the womb?

Messrs. NELSON & ROBY, Messrs. EDEN & EDEN, and Messrs. CREA & EWING, for the appellant.

Mr. A. B. BUNN, for the appellee.

Per CURIAM: This case was before the court at a former term, and the decision then made is reported in 53 Ill. 407. We reversed the judgment solely on the ground that the damages were excessive. There has been another trial, and the

jury have found a verdict for a sum a little larger than the former one, and the court gave judgment. The evidence on the second trial shows that the injury to the plaintiff was much more serious than was proven on the first, and we can not again set aside the verdict for the same reasons that induced our former judgment.

A question is raised by appellant as to the form of a certain question suffered by the court to be propounded to the medical witnesses, but this manner of interrogating physicians called as experts is very common and almost unavoidable.

We discover no error in the record, and the judgment must be affirmed.

*Judgment affirmed.*