## THE CITY OF CHICAGO

### v.

### KATE DIDIER.

*Opinion filed June 19, 1907.*

1. EVIDENCE—*when a physician may give opinion that physical conditions are the result of the injury.* If there is no dispute that the plaintiff was injured or as to the manner in which the injury was received, but the question is whether certain existing physical conditions are the result of the injury, the determination of which question requires special knowledge, physicians possessing such knowledge may express their opinions as to whether the physical conditions were the result of the injury. (*Illinois Central Railroad Co. v. Smith,* 208 Ill. 608, distinguished.)

2. SAME—*when expert's answer may be based partly upon the testimony.* Where the evidence as to the fact and manner of the plaintiff's injury is not disputed, the answer of a medical witness to a question calling for his opinion as to whether certain physical conditions of the plaintiff were the result of the injury may be based partly upon the testimony which the witness has heard describing the manner in which the injury was received.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JAMES HAMILTON LEWIS, Corporation Counsel, and JOHN R. CAVERLY, (JOSEPH B. DAVID, of counsel,) for appellant.

QUIN O'BRIEN, and ARCHIBALD A. McKINLEY, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee sued appellant in the superior court of Cook county to recover damages she claims to have sustained from a fall on a public sidewalk of the city of Chicago.

The declaration alleged the fall was caused by the negligence of the city of Chicago in allowing said sidewalk to become and remain in a defective and unsafe condition of repair. Appellee recovered a verdict and judgment in the trial court and appellant prosecuted an appeal to the Appellate Court for the First District, where the judgment of the trial court was affirmed. From the judgment of the Appellate Court the city prosecutes this appeal to this court.

That appellant was guilty of the negligence charged and that the appellee was injured in consequence thereof and is entitled to recover damages therefor is admitted. Substantially the only grounds upon which a reversal of the judgments of the Appellate Court and trial court is asked are, that certain questions were permitted to be asked and answered by medical witnesses as experts, which it is contended were improper and prejudicial to the appellant and tended to enhance appellee's damages. These questions related to the condition of appellee after her fall, testified to by physicians.

The undisputed proof is that appellee was rendered unconscious by the fall and so remained for nearly two hours. One of her knees was injured. She testified she was pregnant at the time of the fall and that a miscarriage resulted. Profuse hemorrhages of the womb followed the injury and such derangement of the female organs as to cause great distress and necessitate a surgical operation. The injury to the knee was called synovitis, which is defined as an inflammation of the synovial membrane lining the knee joint. This caused such effusion of water in the joint as necessitated its being drawn off several times and rendered appellee lame. Appellant does not deny that the injury to the knee was caused by appellee's fall on the sidewalk.

No medical testimony was offered by appellant. Four physicians testified on behalf of appellee. Some of these medical witnesses were permitted to give their opinions, as experts, as to the physical condition of appellee, based partly

on the testimony of witnesses they had heard testify on the trial, and it is contended this was erroneous. In the examination of Dr. O'Neill counsel began a question by reciting as an assumption the cause and manner of appellee's fall and the immediate results, and then asked the witness if he had heard the plaintiff's testimony. The witness answered that he had, and had also heard the testimony of Dr. Nielsen, who was appellee's attending physician. He was then asked, assuming the accident occurred in the manner described and assuming the truth of the testimony the witness had heard, what would he say was the cause of the condition he found the knee in? The witness gave it as his opinion that it resulted from the accident. Dr. Kerber testified that he had examined appellee, and among other things found a slight laceration of the cervix, which was healed, that had been caused by childbirth. Her counsel was permitted to ask the doctor with reference to the uterine and pelvic conditions in substantially the same form he had inquired of Dr. O'Neill with reference to the knee. He answered, the cervical tear was due to childbirth and the other conditions to the accident. Dr. Nielsen, the family physician, was also permitted to testify that in his opinion the accident was the cause of the condition appellee was in as described by him. It is contended that permitting these witnesses to give their opinions, as experts, that the appellee's physical condition, as described in their testimony, was caused by her fall on the sidewalk, was an invasion of the province of the jury.

There is no dispute as to the manner and cause of appellee's injury in the first instance, and there appears to be no dispute that the conditions of the knee as described by the physicians were caused by the fall. It is contended, however, that all the afflictions of appellee's female organs did not result from the accident, and that this was a question for the jury to determine; also, that the synovitis of the knee joint had been cured. Appellant's argument is

based chiefly upon the theory, that the evidence was conflicting as to whether appellee's condition, as described by the testimony, was the result of her fall on the sidewalk. Dr. Hipp testified that in one of his examinations of appellee he found a laceration of the neck of the womb, or cervix, that had been caused by a previous childbirth. It was undoubtedly the same thing that Dr. O'Neill had testified to as a tear that had healed. On cross-examination Dr. Hipp testified he would not want to say this caused the womb trouble appellee was suffering from; that it might have helped to cause it. From these statements it is argued that appellee's own testimony as to whether there was any other cause for her uterine and pelvic troubles was conflicting. We do not so regard it. The laceration of the cervix, as Dr. Hipp called it, or the tear, as Dr. O'Neill called it, both agree was produced by childbirth. As appellee had not given birth to a child for eight years it must have been at least of that long standing. It is clear from the testimony of the physicians that the injury was slight, and the undisputed evidence further shows that up to the time of appellee's fall upon the sidewalk she was a strong, healthy, vigorous woman, able to perform hard manual labor. Since the accident she has been practically an invalid all the time. The testimony of the doctors who were asked their opinions was, that her physical condition was the result of her fall, and the testimony of all the other witnesses offered by appellee tended to prove the same thing. Appellant offered some evidence tending to prove that appellee had been seen, since her injury, performing such acts as appeared to be inconsistent with her continued physical condition as described by herself and the physicians. If the isolated fragments of certain medical witnesses claimed by appellant to conflict with other medical testimony, standing alone, appear to do so, when read in connection with the whole of the testimony of the witness there is no conflict. This applies as well to the conditions relating to the knee as to the pelvic conditions.

We are of opinion, also, that some, at least, of these questions were not preserved for review by proper objections and exceptions; but as we have reached the conclusion that no error was committed in permitting the questions to be asked and answered, even if proper exceptions had been preserved, we shall not discuss that branch of the case.

There is some apparent confusion in the authorities on the question as to whether, in such cases as this, a medical expert may be asked his opinion as to whether the physical conditions of the injured party are the result of the injuries complained of. Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not competent for witnesses to give their opinions on that subject; but where there is no dispute as to the manner of the injury, and the question is as to whether certain physical conditions were caused by the injury complained of, and the determination of the question involves a special skill or trade, or a knowledge of science that does not come within the experience of laymen possessing the education or knowledge common to those moving in the ordinary walks and engaged in the ordinary occupations of life, then persons possessing the special knowledge, skill or science may give their opinions on the subject. Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it did produce them. Expressions will be found in some cases tending to support that view, but the weight of authority in this State, as well as in other jurisdictions, does not support appellant's contention.

Great reliance is placed on *Illinois Central Railroad Co.* v. *Smith,* 208 Ill. 608. In that case plaintiff testified that his foot was injured in a certain manner and by reason of certain conditions of defendant's cars, which he described. Three witnesses on behalf of defendant testified they saw the plaintiff before he was released from the condition in which he was injured, and that the conditions he described

as causing his injury did not exist. Five other witnesses testified, for defendant, that they examined the place of the injury immediately after the accident and that the conditions which he said caused his foot to get in a position where it was crushed did not exist. Two doctors were permitted to give their opinions, as experts, as to the manner in which plaintiff received his injury and as to the conditions which caused it. This was held erroneous, for the reason that the jury was as capable of determining from the evidence how the injury occurred as the doctors were, and it was held the question was not a proper subject for expert testimony. A large number of cases are cited and quoted from in the opinion, and some of them hold that it was proper to ask an expert what might have caused an injury, but what in fact did cause it is a question of fact for the jury.

We think the apparent confusion of the authorities arises from a failure to distinguish between cases where the manner in which the injury is received is admitted and cases where the manner of the injury is denied. *Illinois Central Railroad Co.* v. *Smith, supra,* belongs to the latter class of cases and the case at bar to the former class.

*Elgin, Aurora and Southern Traction Co.* v. *Wilson,* 217 Ill. 47, was a suit to recover damages for a personal injury caused by a car upon which plaintiff was riding, colliding with empty cars standing on a switch track. The collision resulted from the switch being left open. There was no denial as to how the injury occurred. A doctor who had examined plaintiff was asked to state his opinion as to what relation her then condition bore to the injury complained of. The testimony on behalf of plaintiff tended to show that she was suffering from neurasthenia as a result of the accident, while testimony for the defendant tended to show that this condition might have resulted from other causes than the accident. The question asked of the medical expert was objected to on the ground that it was not predicated on the testimony in the case. The court said (p. 55): "The

ground or grounds of this objection are not entirely clear. The ground intended to be advanced may have been that it was improper to base an opinion on anything save the testimony heard by the expert, and was improper because it asked for an opinion based also, in part, on the personal examination of appellee. It may have been on the ground that it was improper because it was not predicated on all of the testimony in the case relative to the physical condition of the appellee. Giving to the objection either of these meanings, if either ground of objection had been sustained the correct rule would not have been applied."

*Chicago Union Traction Co.* v. *Fortier,* 205 Ill. 305, was a suit to recover damages for an injury claimed to have been sustained by plaintiff by an accident while she was a passenger on one of defendant's cars. There does not appear to have been any controversy as to how the injury occurred. One of the defenses was that plaintiff was feigning a certain condition and injury to the hip joint. Medical witnesses on behalf of plaintiff were asked, and permitted to answer, as experts, whether in their opinion the alleged injury to the hip was real or feigned, and this was held to be proper.

*Village of Chatsworth* v. *Rowe,* 166 Ill. 114, was a suit by the plaintiff to recover damages for an injury alleged to have been sustained from a fall on a defective sidewalk. The doctor who treated the plaintiff's injury was permitted to give his opinion as to the cause of it. The court said (p. 117): "If, from an examination, the physician was able to tell what was the cause of the injury, his opinion was competent for the jury, in connection with other evidence."

*Louisville, New Albany and Chicago Railway Co.* v. *Shires,* 108 Ill. 617, was a suit to recover damages from the railroad company for an injury alleged to have been sustained by the plaintiff at a public crossing. The doctor who treated the plaintiff was asked to give his opinion as to what caused the present condition of plaintiff as described

by him, and answered, "My opinion is, it results from the injury in November last." The question appears to have been objected to on the ground that the witness was not shown to have had any knowledge of plaintiff's condition before the accident. The proof showed the witness had not treated him before that time but that he had met him almost daily for a considerable period before the injury, and the court said: "We think he had sufficient knowledge upon which to base an intelligent opinion as to the cause of his then illness."

*City of Decatur* v. *Fisher,* 63 Ill. 241, was a suit to recover damages for injuries claimed to have been sustained by reason of a fall through a defective sidewalk. Plaintiff was a single woman, nineteen years of age. Her testimony tended to show that she was in good health prior to the accident. While passing over a sidewalk one of the boards suddenly gave way, precipitating her into a vault beneath the sidewalk, six or seven feet deep. In falling, the small of her back struck against some solid substance, supposed to be a brick wall or timber across the vault. Shortly afterwards pains occurred in the lower part of her abdomen, and in a few days a remittent fever, with chills, set in. The injury occurred in July, and in October afterward an examination disclosed that she had falling of the womb. This trouble was claimed to have been caused by the fall. The defense proved that plaintiff rode nine miles in a spring wagon on the day of the injury and the day following rode two miles on horseback, and claimed that the conditions that followed might have resulted from these things instead of from the fall. A hypothetical question was asked a medical witness by counsel for plaintiff, which concluded as follows: "Would you attribute such falling of the womb to the fall through the sidewalk, or would such a fall be sufficient to produce such falling of the womb?" Permitting this question to be answered was assigned as error on appeal to this court, and it was held not to be erroneous.

*West Chicago Street Railroad Co.* v. *Dougherty*, 209 Ill. 241, was a suit to recover for personal injuries resulting from a collision between one of appellant's cars and a wagon in which the plaintiff was riding. The case was tried three times. On the first trial the only injury complained of was to the left hip and ankle. On the second trial, in addition to those injuries, it was claimed the plaintiff had an oblique inguinal hernia and a detachment of the retina of the left eye, resulting from the accident. On the third trial it was proven that the condition of the eye became so serious that the ball had to be removed. The defense claimed that the hernia and the injury to the eye did not result from the accident. Dr. Fellows, who had not examined plaintiff till long after the accident, was permitted to give his opinion as to the cause of the injury to the eye. This was assigned as error on appeal to this court. The testimony was held to be competent, its weight and credibility to be determined by the jury.

In *Wood* v. *Metropolitan Street Railway Co.* 181 Mo. 433, it was held competent for a medical expert to give his opinion as to whether the injury complained of caused the disease or condition found in the injured person, and a large number of cases of different States are cited in the opinion as supporting that view.

*Tullis* v. *Rankin,* 35 L. R. A. 449, was an action for malpractice in the amputation of a leg. The first amputation was made in May, 1893. The wound did not heal, and the pain, which was sometimes intense, never subsided until a second amputation was made, nearly two years afterwards. For the purpose of showing that the first amputation was negligently made, the doctors who made the second amputation, after testifying as to the condition of the limb and patient at the time, were asked what, in their opinion, caused the condition they found the limb in at the time of the second amputation. Objections were made and sustained to his testimony, and this was held to be erroneous.

*Hunt* v. *Lowell Gas Light Co.* 85 Am. Dec. 697, was a suit against a gas company for an injury alleged to have been caused by inhalation of gas escaping from the pipes of defendant. Plaintiffs proved that they had been in good health before the escape of gas into the house but soon afterwards became seriously ill. Physicians were asked, assuming the statements made by plaintiffs to be true, what, in their opinion, caused their sickness, and answered it was caused by breathing gas. The court held the question required of the witnesses only a scientific opinion, and was proper.

Numerous authorities of courts of last resort of other States might be cited in support of the rule announced in the authorities above mentioned. The reason given for permitting a properly qualified witness to give his opinion as to what did produce certain results or consequences, and not what might have produced them, is, that the fact to be established is what did cause the conditions found to exist. Where the determination of that question involves scientific knowledge or skill which is possessed only by those who have given the matter special study and with which jurors and others engaged in the ordinary avocations of life are unfamiliar, a witness possessing the necessary qualifications may be asked for his opinion as to what did cause the conditions described. Such an opinion is not conclusive and is subject to be contradicted by other evidence. It is for the jury to determine the weight and value of such opinions when considered in connection with all the evidence in the case.

It is also contended that the form of the questions asked the medical experts authorized them to base their opinions, in part, upon testimony they had heard on the trial. We have above set out the substance of the questions. Questions in substantially the form adopted in this case, where the testimony is not conflicting, have been held not erroneous in *Schneider* v. *Manning,* 121 Ill. 376; *Hunt* v. *Lowell*

*Gas Light Co. supra;* 12 Am. & Eng. Ency. of Law, (2d ed.) 459; 8 Ency. of Pl. & Pr. 762.

We are of opinion there is no reversible error in this record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*