## Martin McCullough, Appellee, v. Aurora, Elgin & Chicago Railway Company, Appellant.

### Gen. No. 5227.

EVIDENCE—*when opinion of medical expert incompetent.* The statements of the plaintiff and the knowledge obtained from him during an examination by a physician for the purpose of qualifying as a witness are self-serving in law and it is error for the court to refuse to strike out opinions of such physician based upon subjective symptoms, tests or self-serving statements so made by the plaintiff.

Action in case for personal injuries. Appeal from the City Court of Aurora; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed March 11, 1910.

HOPKINS, PEFFERS & HOPKINS, for appellant.

J. C. MURPHY and B. P. ALSCHULER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case commenced in the City Court of Aurora by Martin McCullough, to recover damages for personal injuries alleged to have been sustained by him in consequence of the negligence of the defendant while he was a passenger upon one of its interurban cars. On a trial the jury returned a verdict for $5,000 upon which judgment was rendered, and the defendant appeals.

The evidence shows that the appellee resided at Batavia and on the morning of July 21, 1908, the date of the injury, he got upon a car of appellant at Batavia to ride to Aurora, where appellee was engaged as an accountant in the office of a gas company. The appellee stood upon the rear platform of the car with his back against the controller. The car was going fast and collided with another car of appellant company. The collision threw appellee forward, and

it is claimed that he rebounded and his back just below the shoulder struck the controller.

The appellee was taken home and was attended by Dr. Johnson. He was confined to his bed about four weeks after that time; he was up, and got about on crutches in a shuffling manner from October 1st until December, when he claims to have become worse and unable to move about from that time. About a week before the trial, which was in January, 1909, the appellee went to a hospital in Aurora for special treatment on his own suggestion, but his physician, Dr. Johnson, gave him the same treatment at the hospital that he received before going to the hospital.

It is claimed by appellant that the court erred in admitting improper evidence and in refusing on motion of appellant to exclude evidence after it appeared that the same was improper. Appellee testified that he was thirty-one years of age; that at seven years of age he had had menengitis and typhoid fever in the fall of the year; that it affected his speech for some time afterwards so that he stammered and stuttered and his walking was affected so that he had to learn to walk again; that in 1906, he got leave of absence from work because he was feeling sick; that in 1907, he had fallen on the ice and broken his ankle; that from early in May, 1908, he had been treated by Dr. Kiernan on the back with an electrical vibrator up to the time of the injury; and that before that time he had worn for a year or more an appliance for spinal support. Dr. Kiernan testified that he found a sensitive spine, spinal irritation and a tenderness over the spine. The claim of appellee on the trial was that he was suffering from myelitis—inflammation of the spinal cord or some of its membranes—resulting from the collision, while appellant claims that appellee was suffering from neurasthenia or nervous prostration before the collision and that the injuries claimed to be suffered by appellee were feigned and simulated.

On Saturday before the trial Dr. Guyer and one of appellee's attorneys visited appellee at the hospital; on the following day Dr. Guyer, Dr. Dryer and Dr. Banker visited appellee at the hospital at the request of the attorney for appellee and made an examination of appellee for the purpose of being witnesses in the case. These doctors held a consultation to arrive at a conclusion concerning appellee's case. Dr. Guyer testified that he examined the appellee as to his family history, his previous illnesses and his present condition; that he found he was able to distinguish heat from cold (this was excluded); that he responded to the prick of a pin, which was also excluded; that he attempted to have the patient walk and that he did not move his legs as a normal individual did; that he swung his head from side to side and bent forward; that he only took one step and that was with a mowing gait. He was then asked if he was able to state from his examination of the patient without his previous history, what the patient was suffering from, and the witness answered, "no." He was then asked if he had an opinion as to what the patient was suffering from and answered, "yes." He was then asked what in his opinion the patient was suffering from; to this question an objection was overruled, and the witness answered that he was suffering from an organic disease of the spinal column which he would call myelitis. He was then asked a long hypothetical question covering appellee's history and many symptoms which it was claimed to have been proved appellee had exhibited, and assuming these facts, if he had an opinion concerning the patient's present condition. An objection was overruled to that question and the witness answered that he had an organic disturbance in the spine; he was then asked what he would call that disturbance and replied he could not tell because some symptoms were lacking. He was then asked to take the facts assumed in the hypothetical question with "the ob-

jective symptoms you found on your examination to tell what he was suffering from.'' An objection was overruled and he answered, ''he has myelitis.'' On cross-examination the witness said he could not authoritatively tell whether appellee could walk; that appellee might have simulated that he could not walk; that appellee knew he was brought there by his attorney to be a witness; that the opinion he had given was passed upon the history of the case, the subjective and objective symptoms, that his opinion was partly based upon the subjective symptoms. A motion was then made by appellant to rule out the testimony of the witness, where the witness had given an opinion based upon his subjective and objective knowledge of appellee, and this motion was overruled. The examination of Dr. Banker and Dr. Dryer were substantially the same as that of Dr. Guyer, with similar rulings. If these physicians had treated appellee and their testimony had been based upon what they learned while they were treating him professionally a different rule would apply from that which controls when the physician simply examines the party with a view of being a witness. The statements of appellee and the knowledge obtained from him during the examination by the physician for the purpose of qualifying as a witness were self-serving, and it was error for the court to refuse to strike out opinions of witnesses based upon subjective symptoms, tests, or self-serving statements of appellee. Shaughnessy v. Holt, 236 Ill. 485; Greinke v. C. C. Ry. Co., 234 Ill. 564; Chicago Union Trac. Co. v. Giese, 229 Ill. 260; C. & E. I. R. R. Co. v. Donworth, 203 Ill. 192. This question is very fully discussed in the Greinke case, with a full citation of the authorities on that question, and there is no necessity of enlarging upon it.

The appellee was treated by Doctor Johnson professionally for the injuries sued for and as we have said a different rule prevails as to such witnesses.

''There is some apparent confusion in the author-

ities on the question as to whether, in such cases as this, a medical expert may be asked his opinion as to whether the physical conditions of the injured party are the result of the injuries complained of. Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not competent for witnesses to give their opinions on that subject; but where there is no dispute as to the manner of the injury, the question is as to whether certain physical conditions were caused by the injury complained of, and the determination of the question involves a special skill or trade, or a knowledge of science that does not come within the experience of laymen possessing the education or knowledge common to those moving in the ordinary walks of life, then persons possessing the special knowledge, skill or science may give their opinions on the subject. Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it did produce them. Expressions will be found in some cases tending to support that view, but the weight of authority in this State, as well as in other jurisdictions does not support appellant's contention.'' City of Chicago v. Didier, 227 Ill. 571. There was a controverted question as to whether the ailments from which appellee now claims to be suffering were caused by the collision or were matters of long standing. The evidence of Drs. Guyer, Dryer and Banker, except upon the original hypothetical question, was improper and should have been excluded from the consideration of the jury. A proper hypothetical question to put to them would have been an abstract question which would have left it to the jury to make the application of the question and answer to the case on trial. In the examination of Dr. Johnson, he testified that appellee was suffering from neurasthenia. Counsel for appellee suggested the term myelitis as the disease he was suffering from, and the doctor

adopted the suggestion of counsel. This was improper, and counsel should not have been permitted to lead the witness in that way.

For the errors in the admission of evidence the judgment is reversed and the cause remanded.

*Reversed and remanded.*