# James J. Ryan, Appellee, v. City of Chicago, Appellant.

## Gen. No. 17,519.

1.  TRIAL—*directed verdict.* An instruction to direct a verdict should not be given if there is any evidence from which, considered by itself, the jury could, without acting unreasonably in the eyes of the law, find that the material assessments in the declaration have been proven; and the instruction must be denied even if the court is of the opinion that in case a verdict is based upon such evidence it must be set aside.

2.  MUNICIPAL CORPORATIONS—*evidence sufficient to show accident occurred on sidewalk.* Plaintiff, in a city sidewalk accident case, testified that the accident occurred on a sidewalk not under a railroad subway, and he was corroborated by other witnesses. Witnesses for the city testified that he was found under the subway and admitted after he was carried into an adjoining office that he fell under the subway, which testimony was contradicted. *Held,* the proof supported a verdict for the plaintiff.

3.  MUNICIPAL CORPORATIONS—*evidence of obstruction on sidewalk.* A person fell on a city sidewalk and introduced evidence that the walk was composed of natural earth that sloped downward; that several roots of a tree protruded six to eight inches above its surface; that heavy snowfalls had occurred in the preceding month; that the snow had been partly trodden down and concealed the uneven condition of the path, and that the condition had existed for two weeks. Other witnesses testified to the existence of a wooden sidewalk and the absence of any obstruction. *Held,* a verdict for the plaintiff should be sustained.

4.  DAMAGES—*sufficiency of declaration to sustain proof.* Under an averment that plaintiff, by reason of an obstruction, fell upon a sidewalk, and sustained injuries "in and about the body, head and limbs, both internally and externally, and divers of the bones of his body were then and there broken," it is immaterial whether his knee cap was broken by spasmodic muscular action or by coming in forcible contact with some hard substance.

5.  EVIDENCE—*when opinion evidence is not objectionable.* Where under the averments of a declaration it is immaterial whether a broken knee cap was caused by direct or indirect violence, medical expert opinion evidence that the fracture was caused by indirect, as distinguished from direct violence, is not objectionable as being opinion evidence as to the cause of an injury.

6.  APPEAL AND ERRORS—*reversible error.* Where the location where an accident happened was in dispute, permitting a question whether the

witness had heard that a man was injured at a certain place, that was too specific as to the location, *held*, not to warrant a reversal.

7. EVIDENCE—*preliminary proof before admitting photograph.* Where a witness in a sidewalk accident case testified that a photograph was a correct picture of a certain condition of the sidewalk, the photograph was properly excluded, there being no proof of who made the photograph, the skill of the photographer, the kind of instrument used, where it was placed, that it was a picture of the *locus in quo*, when it was taken, and, further, it not appearing how the photograph would have been helpful in determining its issue involved.

8. INSTRUCTIONS—*care to be used by intoxicated person.* Where there is some evidence that plaintiff was intoxicated when he fell on a sidewalk, an instruction, requested by plaintiff, as to the meaning of the terms ordinary care or reasonable care that omits the requirement that plaintiff should have used the same care that a sober person would have exercised, should be read in connection with an instruction, offered by defendant, as to intoxication that would be contributory negligence, and when so read, will not mislead the jury.

9. DAMAGES—*when $6,000 is not excessive.* $6,000 damages for a fall upon a street is not excessive where an injury to the knee cap resulted in plaintiff becoming an incurable cripple, putting him to great expense, greatly reducing his earning capacity, and causing him to suffer much pain.

Appeal from the Circuit Court of Cook county; the HON. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed June 30, 1913. Rehearing denied July 24, 1913.

EDWARD J. BRUNDAGE, WILLIAM H. SEXTON, CLYDE L. DAY and N. L. PIOTROWSKI, for appellant; DAVID K. TONE and DAVID R. LEVY, of counsel.

McGOORTY & POLLOCK, for appellee.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

There are two counts in the declaration in this case. The negligence charged against appellant in the first count is, in substance and effect, that it suffered and allowed its sidewalk on Armitage avenue "a short distance east of the subway over which the tracks of the Chicago & North Western Railway Company extend"

to be and remain obstructed and in bad and unsafe condition by reason of large accumulations of snow and ice thereon, which appellant allowed and permitted to there remain after the lapse of a reasonable length of time, in which the same might have been removed. The second count is substantially the same as the first, except that the obstructions are described as ''ice, snow and other substances.'' Both counts are in other respects formal. The declaration states a cause of action. The injury sustained and the manner in which it was inflicted are described in the first count of the declaration as follows: ''By means whereof the plaintiff, who was then and there passing along and upon the said sidewalk and was exercising ordinary and reasonable care, then and there necessarily and unavoidably slipped and stumbled upon and against one of the said icy rough obstructions of frozen snow and was thereby thrown and fell to and upon the said sidewalk, and the accumulation of snow and ice thereon, and thereby sustained serious injuries in and about the body, head and limbs, both internally and externally, and divers of the bones of his body were then and there broken, and the muscles and ligaments of his body were then and there torn, bruised and lacerated, and he did then and there receive a great nervous shock from which he will never fully recover.'' In the second count almost the identical language is used. The jury found appellant guilty and assessed the damages of appellee at $7,000. After a remittitur of $1,000, judgment was entered for $6,000. This is the judgment appealed from.

Appellant's first contention is that the court erred in refusing to direct a verdict of not guilty. An instruction of that character should not be given if there is evidence in the record from which, considered by itself, the jury could, without acting unreasonably in the eyes of the law, find that the material averments in the declaration have been proven. If there is such

evidence in the record, even if the trial court is of the opinion that in case a verdict is based thereon it must be set aside, still the motion must be denied. It is not for the trial court on such a motion to weigh the evidence or pass upon the credibility of the witnesses. *Libby, McNeill & Libby v. Cook*, 222 Ill. 206. There is evidence in this record fairly tending to prove all the material averments in the declaration and the motion was properly denied.

It is next urged that the verdict is manifestly contrary to the weight of the evidence in that the evidence shows that the accident occurred under the subway of the Chicago & North Western Railway, instead of east of it, as alleged in the declaration; that the sidewalk was not obstructed by ice, snow or other substances; that the conditions there had not continued long enough to constitute constructive notice to appellant, or so that the same could have been remedied by it and that the main injury complained of, namely, the fracture of the patella or knee cap, was not caused in the manner or by the means testified to by the witnesses of appellee.

No one was present or saw the accident except appellee. He testified that it occurred just west of a tree that is shown to have been about forty feet east of the subway. He was corroborated by Cora Queen, who was the first person who saw appellee after he fell. She testified he was then about five feet west of the tree. He was also corroborated by Dr. Blair, who was the second person who saw him after he fell. Dr. Blair testified he was a few feet west of the tree, perhaps ten or fifteen feet. Appellee testified that, before Dr. Blair came he pushed himself with his hands, and slipped ten or twelve feet in the direction of the subway from the tree; that Dr. Blair and a passer-by by the name of Lunberg, since dead, then moved him to about the center of the subway, and then laid him down and went and procured more aid

and carried him to a near-by coal office. Dr. Blair corroborates this except he is not certain as to the distance appellee was first carried before he went for assistance. To contradict this James Van Natta, one of the men whom the doctor procured to assist him in moving appellee to the coal office, says when he returned with the doctor to aid him in carrying appellee they found him near the middle of the subway. This is in accord with the testimony of appellee as to where the doctor and Lunberg left him to go for aid. James Van Natta and Ira Van Natta both testified that appellee after he was in the coal office said in their presence and in the presence of Dr. Blair and a Mr. Goebel that he fell under the subway. Thomas Brockwell testified to substantially the same sort of a statement by appellee. These statements are denied by both appellee and Dr. Blair. We are unable to say that in this respect the proof does not support the verdict.

On the question of the condition of the sidewalk or path where the accident occurred on and before the 3rd day of January, 1904, the time when it occurred Miss Queen, Aleck Wosikowski, James Cooney, Albert D. Schilvock, Thomas Jordan, Samuel H. Queen and appellee all testified for appellee. Concretely stated, the testimony of these witnesses shows that for years the walk or path from the subway east for some distance beyond the place where the accident occurred was composed of the natural earth on which, sometime before the accident, had been placed a "couple" of loads of cinders that by time and use had become so mixed with the earth as to leave the path muddy in wet times; that near the center of where the sidewalk would be, if there had been one, and some thirty-five or forty feet east of the subway, a large tree some two and one-half feet in diameter stood; that several roots of this tree protruded above the surface of the path; that one of these roots extended entirely across the path used by pedestrians and was from six to eight

inches above the general surface of the path there; that the path sloped downward for three or four feet from the tree westward at a rate variously described as three inches to the foot and as forty-five degrees; that this condition had existed for years; that during the winter none of the snows that had fallen had been cleaned from this path, but had been trodden down leaving the surface very uneven and icy; that that condition had existed for at least two weeks; that on the night before the accident there had been a considerable fall of snow that had not been cleared away, but had been partly trodden down by pedestrians and served to hide the uneven condition of the path; that when snow fell and the wind blew, the snow drifted in the path around and near the tree; that it had so drifted during the last snow, at least one of the witnesses describing the drift as a "mountain."

On this subject the following witnesses testified on behalf of appellant. Henry J. Cox, the official weather forecaster for the United States Government at Chicago, testified to falls of snow on December 1st, 3rd, 4th, 5th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 16th, 20th, 24th, 27th, 28th, 29th, and 30th, in varying amounts from a mere trace to eleven inches on the various dates; that on January 2, 1904, three and seven-tenths inches of snow fell and that on January 3, 1904, there was seven and five-tenths inches of snow on the ground. Thomas Brockwell testified he never noticed any roots there; that there was a wooden sidewalk east of the place of the accident, but none there at the time of the accident. Frank H. Lambmesser testified that there was a path there about 18 inches wide and that the snow in the path was 3 or 4 inches deep. J. J. Curley testified that there was and had been for sometime before the accident a cinder walk at the place in question, but that he did not see any roots running across the walk; that there were the stumps of roots that looked as if they had been cut off that were 5 or 6 inches thick;

that he did not know when they were cut, but thought they had not been cut after the accident. George Van Natta on his direct examination testified. positively that at the time of the accident there was a two inch plank walk at the place in question. On cross-examination he says, "*My recollection* is that I laid the two inch plank walk that extended from the driveway to the cement walk in 1900. *I think* it was taken up in 1904. * * * That is the way I recollect it. * * * It was removed in 1904, because we had to cut down and get down even with the railroad, cut down and get down even with the street. The street was paved before January, 1904, but I mean we cut down as soon as I got around to it, to comply with the street to get down on a level with it. * * * I had occasion to cut the roots when I put the cinders in." James Van Natta testified that there was a wooden sidewalk at the place in question which he thought had not been removed at the time of the accident. Ira J. Van Natta testified that there was a plank sidewalk at the place in question at the time of the accident; that it had been there four or five years, and fitted snugly around the tree and that there was not at any time any roots or "hammocks" of ice projecting over the sidewalk there. Mrs. Nora Connors testified that she did not see anything wrong with the sidewalk. On this point, while the testimony of some of appellant's witnesses conflicts in some respects with the testimony of appellee's witnesses and in some respects with the testimony of other of appellant's witnesses, we think the weight of it all, measured by both the number of the witnesses and their apparent credibility, strongly preponderates in favor of appellee's theory of what the conditions in fact were, and shows a condition which the jury might well conclude constituted a dangerous obstruction. If the conditions there were as testified to by appellee's witnesses, then it was for the jury to determine not only whether there was there a danger-

ous obstruction, but whether it had been there long enough to amount to constructive notice to appellant. The finding of the jury was not manifestly contrary to the weight of the evidence on either of these questions.

We are unable to see how the question whether the knee cap of appellee was broken by direct or indirect violence is material in this case. The declaration is broad enough to permit of a recovery, if it was broken in either way. The averment in this respect has already been adverted to. The substance of it is that appellee, by reason of the obstructions, unavoidably slipped, stumbled and fell upon the sidewalk, and sustained injuries "in and about the body, head and limbs, both internally and externally, and divers of the bones of his body were then and there broken  *  *  *."

There was no averment in the declaration as to whether the violence that resulted in the fracture was applied directly or indirectly, and appellee was under no obligation to prove how it was applied. The proof amply shows that it was broken in consequence of the fall. In fact, there is no contention that it was not so broken. That the street was obstructed, that appellant had notice of such obstruction, if there was any, that appellee fell where he averred and testified he fell, is controverted and the burden was on appellee to prove those things. Appellee also introduced medical expert opinion evidence for the purpose of showing that the immediate cause of the fracture was indirect, as distinguished from direct violence. Objection was made to this evidence on the ground that opinion evidence is inadmissible to prove what caused the injury, or, in other words, that in expressing an opinion on that subject the witness would be, as counsel expressed it, "usurping the province of the jury." This objection the court overruled. It is insisted that this ruling was erroneous. The objection made assumed that the manner in which the force that broke the

patella was applied, was the cause of the injury, and was an issue to be determined by the jury. As we have seen, this was an erroneous conception of the issues involved. We think the objection, as made, was properly overruled. The question for the jury to determine was not whether the patella was broken by spasmodic muscular action or by coming in forcible contact with some hard substance, but was whether it was broken in consequence of appellee's stumbling, slipping and falling, as alleged in the declaration. We are unable to see how this evidence could have prejudiced the rights of appellant, for if it was otherwise liable, whether the force that broke the patella was direct or indirect would not affect that liability.

The case of *Illinois Cent. R. Co. v. Smith*, 208 Ill. 608, has no application to the case at bar. In that case the declaration charged the railroad company with negligence in allowing the platform on the car on which Smith was working to become and remain out of repair and in an unsafe and dangerous condition by reason of certain particularly described defects, among which was a hole or notch dug or ground therein, and certain parts of the bumpers, platform and coupling that were charged to be broken, splintered and gone. See *Illinois Cent. R. Co. v. Smith*, 111 Ill. App. 177. The controversy was as to whether these defects so described in the declaration existed. The Supreme Court held that opinion evidence, particularly that based on the character of the injuries received, was incompetent and a usurpation of the province of the jury. That case is reviewed and distinguished in *City of Chicago v. Didier*, 227 Ill. 571, where it is held that where opinion evidence is directed to what was the cause of the injury, it is inadmissible, and where it is directed to what was the result of the injury, it is admissible. The opinion evidence offered in this case was directed neither to the cause nor to the result of the injury.

When appellee's witness, Samuel H. Queen, took the

stand to testify, he was asked the usual preliminary questions as to his name, age, residence and acquaintance with appellee. The witness then stated that he knew appellee January 3, 1904, and then the following occurred:

"Q. Did you hear on that day of any man having been injured on the north side of Armitage avenue east of the Chicago & Northwestern subway?

"Mr. Sullivan. That is objected to, as to what he heard. If he heard about the accident, I do not object to that, but I object to fixing any specific place.

"The Court. He may answer.

"Mr. Sullivan. Exception.

"A. Yes, sir."

This is assigned for error. The question was not in good form, but it did not in terms refer to the accident to appellee, and while it was too specific as to location, in view of the fact that the place of the injury was in dispute, it was evidently intended to and must have been understood as directing the attention of the witness to the time when and place where appellee claimed the accident occurred, and not as proof that the accident did occur or of when or where it occurred. The objection should have been sustained, but the error of the court in failing to do so could, we think, have worked no such harm to appellant as would warrant a reversal of the judgment for that reason.

It is next urged that the court erred in excluding a photograph offered in evidence by appellant. The only preliminary proof concerning this photograph was made by the witness, J. J. Curley, who said:

"I am the same Mr. Curley that testified this morning. This photograph is a correct and substantial representation of the sidewalk as it was at the time that the cinders lay there between the subway; it is a correct picture of it.

"I never saw the photograph before to-day; I was shown it at noon to-day. I don't know when it was taken."

There was no proof made of who made the photograph or of his or her skill as a photographer, or of the kind of instrument used or of how it was used or where it was placed, when the picture was taken, or even that it was a picture of *locus in quo,* or when it was taken. Although from a colloquy between counsel at the time it was offered in evidence, it seems to be conceded that it was made in 1906, or between two and three years after the time the accident occurred. Neither does it appear in what way the picture, if admitted, would have been helpful to the jury in determining the issues involved. Neither is it preserved in the record for the inspection of this court. The picture was properly excluded. Other exceptions were taken to the rulings of the court on the admission of evidence, but they are too trivial to warrant the expenditure of time in discussing them. It is sufficient to say the court committed no error in the rulings so complained of.

The court gave to the jury at the request of appellee the following instruction: "The court instructs the jury that the terms ordinary care or reasonable care as used in these instructions and applied to the plaintiff do not mean necessarily extreme care or the highest degree of care, but only such care as a reasonably prudent person would exercise under circumstances such as surrounded the plaintiff before and at the time of the alleged injury."

Appellant complains because the instruction does not inform the jury that appellee was required to exercise the same degree of care for his own safety as a sober person would in the possession of all his faculties have exercised under the same circumstances. While it is true that an instruction somewhat similar to this one was mildly criticised by the Supreme Court in *Wilcke v. Henrotin,* 241 Ill. 169, and while it is there suggested that in cases where there is evidence of the intoxication of the persons whose due care is under

consideration such an instruction should inform the jury that such person is bound to exercise such care for his own safety as an ordinarily prudent person who was in the full possession of all of his powers and faculties, would exercise, still the court there expressly held that the giving of the instruction without the suggested language was not reversible error, because the defect was waived by the complaining party asking instructions of a similar import. There was in this case some testimony introduced to show that appellee was intoxicated at the time of the injuries. While it hardly reached the dignity of evidence, there is just enough of it to be made the basis of a complaint about this instruction. The instruction here complained of does not direct a verdict and must be considered in connection with all the other instructions in the case.

The second instruction given on behalf of appellant is as follows: "The court instructs the jury that if you believe from the evidence that at the time of the alleged injury the plaintiff was intoxicated, and through such intoxication, if such there was, his mental faculties were then impaired, or he had lost such control of his brain or muscles as an ordinarily prudent and cautious person in the full possession of all his faculties would exercise under similar circumstances, and if you further believe from the evidence that such intoxication, if such there was, contributed to the alleged injury, then the plaintiff cannot recover and you should find the defendant, the City of Chicago, not guilty."

Reading these two instructions together, it is inconceivable that the jury could have failed to understand the correct rule.

The objections to the giving of another instruction at the instance of appellee and the refusal of one asked by appellant are based on a misconception of the averments of the declaration and are not well taken.

Appellee's knee cap was broken, the broken parts

were drawn apart and have not and cannot be united. It is undisputed that he is left a hopeless and incurable cripple. He has already been put to large expense, his earning capacity has been greatly reduced, he has suffered and still suffers much pain. The judgment in our opinion is, to say the least, no more than compensatory.

Finding no reversible error in the record, the judgment is affirmed.

*Judgment affirmed.*