Wheeler v. C. and W. I. R. Co. and Belt Ry. Co., 182 Ill. App. 194.

3. NEW TRIAL, § 52*—*when new trial will be granted.* Held that a finding that five hundred dollars was paid by a patient to an agent of defendant physician was against the clear preponderance of evidence, wherefore a new trial should have been granted.

4. WITNESSES, § 256*—*what matters affect credibility.* An instruction as to the credibility of witnesses held to omit the important element of the number of witnesses, the consistency of their testimony, its conformity with experience and its coincidence with collateral circumstances.

George W. Wheeler, Appellee, v. Chicago and Western Indiana Railroad Company and The Belt Railway Company of Chicago, Appellants.

Gen. No. 17,828.

1. MASTER AND SERVANT, § 115*—*when railroads jointly liable for injuries to engineer.* An engineer hired by one railroad company but engaged in operating an engine for two railroad companies having a joint interest in and control of the work, is a joint servant of both and both are liable for injuries sustained by him by reason of their failure to discharge the duties of master.

2. MASTER AND SERVANT, § 745*—*time servant may continue work pending repairs, question for jury.* Whether an engineer, after reporting that his engine needed repairs, continues to use the same longer than was reasonably necessary to permit repairs to be made is a question for the jury.

3. MASTER AND SERVANT, § 745*—*imminency of danger, question for jury.* Whether the danger was so imminent that no reasonable man would have continued to work under the circumstances is a question for the jury.

4. EVIDENCE, § 423*—*when opinion of medical experts admissible.* Medical experts may express their opinion whether plaintiff's physical condition was due to the injury where the fact of the injury is uncontroverted.

5. TRIAL, § 40*—*examination of injuries.* Refusal of court to permit defendants' physicians to examine plaintiff's injuries, held not error.

6. DAMAGES, § 122*—*when not excessive.* Verdict for $15,000 for injury to leg of a locomotive engineer, held not excessive.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Wheeler v. C. and W. I. R. Co. and Belt Ry. Co., 182 Ill. App. 194.

7. PLEADING, § 473*—*when pleadings aided by verdict.* An omission of the word "not" in a count in the declaration, *held* a clerical error not rendering such count insufficient after verdict.

Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed October 13, 1913.

WILLIAM S. KIES, C. G. AUSTIN and BEVERLY W. HOWE, for appellants.

CLARENCE S. DARROW and EDGAR L. MASTERS, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

In an action on the case by plaintiff Wheeler against the two defendant railroad companies to recover for damages alleged to have been sustained by him through the negligence of the defendants, both defendants were found guilty and plaintiff's damages assessed at $20,000. Plaintiff remitted $5,000, had judgment for $15,000, and the defendants appealed. The Chicago and Western Indiana Railroad Company owned certain tracks and engines and leased the same to the Belt Railway Company. At the time of the accident the Belt Railway Company was engaged in elevating the tracks leased to it by the Chicago and Western Indiana Company from 83rd street north to Archer avenue, and used in such work engine 32, an engine leased to it by the Western Indiana Company. Plaintiff was employed by the Western Indiana Company in 1883 and was in its service as a locomotive engineer up to August 12, 1907, when he received the injury for which he sued.

To back the engine a reverse lever was used, which worked in a quadrant with ratchets. The lever extended about four and a half feet above the floor of the engine and underneath the floor was a rod which extended forward about half the length of the boiler,

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

196     APPELLATE COURTS OF ILLINOIS.

Wheeler v. C. and W. I. R. Co. and Belt Ry. Co., 182 Ill. App. 194.

then crossed underneath the boiler and was connected with the arms of the tumbling shaft. Links weighing two hundred pounds were attached to the tumbling shaft, which raised when the lever was pulled back in the quadrant to reverse the engine and went back into place when the lever was pushed forward. to start the engine ahead. A counter-balance spring was located under the boiler in an iron case, which aided to lift the links and hold the reverse lever in place when the engine was reversed. While operating the engine Saturday, August 10, plaintiff noticed that the counter-balance spring did not hold the reverse lever in place when the engine was reversed, and to prevent it from flying forward he was compelled to and did throw his weight against the lever when backing the engine. On taking his engine into the round-house at 83rd street at close of the day's work, plaintiff reported the defective condition of the counter-balance spring by writing in the work book ''Engine 32, counter-balance spring in bad order. Either weak or broken. Engine will not stay locked in back motion. Wants new spring.'' He testified that he reported the condition of the spring to Eisle, the night foreman for both companies, and told him that he had ''put it on the book.'' He further testified that Monday morning, August 12, he asked Eisle if the work on the engine had been done, and Eisle said ''Yes'' and ordered him to take the engine and go to his work. Eisle contradicted the plaintiff, and it will be presumed, in affirmance of the verdict, that the jury believed the plaintiff. About 11:30 A. M. plaintiff was backing the engine, holding the lever in place by throwing his weight against it, and took his ''heft'' off the lever to shut off the throttle to prevent the engine from slipping. As he did so the lever came out of the ratchet and pressed plaintiff's right leg against a valve and fractured his knee cap. He worked the remainder of the day and regularly from that time until August 31, when he called on Dr. Webster, the

chief surgeon of the Western Indiana company. There was some swelling at the right knee cap and it was an inch and a half larger than the other knee. The leg was red on the inside, but there was no evidence of infection. Dr. Webster bandaged the knee. Two days later plaintiff returned and the doctor tightened the bandage. A week later Dr. Webster and his assistant, Dr. Lofton, saw plaintiff at his house and then discovered that his knee cap had been fractured transversely at the lower quarter. Dr. Webster testified that when he first saw plaintiff he could not feel his knee cap because of swelling, but that when he saw him at his house the swelling had subsided so that he could discover the fracture. Plaintiff remained at home from that time until September 23, when he resumed work and worked regularly until the early part of May, 1898. His leg began to swell after he went back to work in September and he went to Dr. Webster for treatment from time to time until some time in the following May, when he went to Mudlavia for treatment. He returned at the end of a week with the knee normal in size and after a few days went back to his work as an engineer. His leg soon began to swell again and he quit work May 29. Since that time his leg has been painful and very much swollen from his ankle to a point midway between the knee and the hip, and he has not been able to work as a locomotive engineer, but since October, 1898, has been a stationary engineer.

The appellants contend that plaintiff was the servant of the Western Indiana Company only, that the court therefore erred in refusing to direct a verdict for the Belt Railway Company and in rendering judgment against either Company. It was admitted by counsel for the defendants at the trial that the Chicago and Western Indiana Railroad Company owned engine 32; that at the time of the accident "the engine was working on track elevation for the Belt Railway Company," and also that the engine was then "working on track

elevation for the Chicago and Western Indiana Railroad Company." Plaintiff ran engine 32, and if he, with that engine, was engaged in track elevation for both railroad companies, both companies must have had a joint interest in and control of the work, and plaintiff, in so rendering services to both, was the joint servant of both, and both were charged with the duties of a master to him, although he was hired by the Western Indiana Company.

The appellants further contend that the court erred in permitting each of the medical experts called by the plaintiff to testify in answer to a hypothetical question, that in his opinion the condition of plaintiff's leg was due to the injury testified to by him. There is in the record no evidence tending to show any injury to plaintiff's knee other than that which he testified he sustained August 12, 1907, and his testimony as to that injury is not controverted. The controverted question was not whether he sustained such injury, nor how it occurred, but whether such injury caused or contributed to the subsequent condition of the leg. In such a case physicians may express their opinion as to whether the physical conditions were the result of the injury. *City of Chicago v. Didier*, 227 Ill. 571.

Appellants further contend that, taking as true the testimony of the plaintiff, he assumed the risk. His complaint and the promise of the defendants, through their night foreman, Eisle, to repair the counterbalance spring, were made when the engine was returned to the round house at the close of the day's work Saturday, August 10. At six o'clock Monday morning he saw that he was to have engine 32, and asked Eisle if he "had done that work on her" and Eisle replied "Yes" and ordered plaintiff to take the engine and go to work. As the complaint was made at the close of work Saturday and plaintiff took out the engine Monday morning at six, if he had taken it out without asking whether the work asked for had been done it would have been a question for the jury

whether he continued to use the engine longer than was reasonably necessary to permit the counter-balance spring to be repaired or replaced by a new one; and we do not think that the time that he might use the engine without assuming the risk was lessened or diminished because the night foreman, in place of making no statement as to whether the work promised had been done, or renewing his promise to do the work asked for, stated that the work had been done, when in fact it had not been done. It is not accurate to say that plaintiff knew at nine o'clock that the work had not been done. What he knew was that when at nine o'clock he first backed the engine the spring acted as it had Saturday. We think that the questions whether the danger was so imminent that no reasonable man would have continued to work under the circumstances, and whether the plaintiff continued longer than was reasonably necessary for the condition to be remedied, were questions of fact for the jury.

We find no reversible error in the rulings of the court on evidence or instructions.

We think the court did not err in refusing to permit defendants' physicians to make an examination of the plaintiff's knee.

We think the omission of the word "not" in the fourth count was a clerical error, and that the count, after verdict, must be held sufficient. We do not think that the verdict is against the evidence nor that the amount of the judgment can be held excessive in view of the condition of plaintiff's leg, which the jury might, we think, properly find from the evidence, was the result of the injury.

We think the record is free from error, and the judgment is affirmed.

*Affirmed.*