CONRAD J. LANGENFELDER ET AL. *v.*
MARGUERITE THOMPSON

[No. 27, April Term, 1941.]

*Decided June 10th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Walter L. Clark,* with whom was *J. Gilbert Prendergast* on the brief, for the appellants.

*Foster H. Fanseen,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal of Conrad J. Langenfelder and George H. Langenfelder is from a judgment entered upon the verdict of a jury in favor of Marguerite Thompson for personal injuries, which she alleged were the result of a collision caused by the negligence of an employee of the appellants.

Mrs. Thompson, a resident of Pittsburgh, Pennsylvania, twenty-eight years of age, was injured while returning from a trip to Annapolis on August 4th, 1939, when a motor truck owned by the appellants crashed into the automobile in which she was touring, just after her husband had stopped it at a red traffic light on the Governor Ritchie Highway. Knocked unconscious by the impact, she was taken in an ambulance to Baltimore, where she stayed two days in a hospital and two more days in rooming house, until she was able to return home. On August 9th, while still suffering intense pain as a result of the collision, she consulted her family physician, Dr. H. Stanley Wallace, of Pittsburgh, a specialist in gynecology and surgery. An examination made by him on August 18th, revealed that her uterus was retroverted and retroflexed. He testified that retroversion and retroflexion can result from different causes, but he had formed an opinion of the cause of Mrs. Thompson's condition from a definite indication by vaginal examination. When asked to give his opinion of the cause of the displacement in this case, he answered: "The accident in all probability."

The appellants, objecting to the doctor's opinion, argued that it invaded the province of the jury. In a decision rendered in 1909, Judge Van Devanter explained the province of the jury as follows: "It is true that in trials by jury it is their province to determine the ultimate facts * * *. And it is also true that this has at times led to the statement that witnesses may not give their opinions upon the ultimate facts which the jury are to

decide, because that would supplant their judgment and usurp their province. But such a statement is not to be taken literally. It but reflects the general rule, which is subject to important qualifications, and never was intended to close any reasonable avenue to the truth in the investigation of questions of fact. Besides, the tendency of modern decisions is not only to give as wide a scope as is reasonably possible to the investigation of such questions, but also to accord to the trial judge a certain discretion in determining what testimony has a tendency to establish the ultimate facts, and to disturb his decision admitting testimony of that character only when it plainly appears that the testimony had no legitimate bearing upon the questions at issue and was calculated to prejudice the minds of the jurors. * * * The most important qualification of the general rule before stated is that which permits a witness possessed of special training, experience, or observation, in respect of the matter under investigation, to testify to his opinion when it will tend to aid the jury in reaching a correct conclusion; the true test being, not the total dependence of the jury upon such testimony, but their inability to judge for themselves as well as is the witness." *United States Smelting Co. v. Parry,* 166 Fed. 407, 410, 411. In accordance with the weight of authority, it has been held by this court that while expert testimony is not admissible on a question which the jurors themselves can decide from the facts, it is admissible when the formation of a rational judgment from the facts requires special training or skill. *Consolidated Gas, Electric Light & Power Co. v. State, use of Smith,* 109 Md. 186, 203, 72 A. 651, 658.

It is obvious that in many cases it would be impossible to ascertain the cause of a bodily or mental ailment except with the aid of medical science. *Matteson v. New York Central R. Co.,* 35 N. Y. 487, 91 Am. Dec. 67, 70; *Chicago Union Traction Co. v. Roberts,* 229 Ill. 481, 82 N. E. 401; *State v. Hessenius,* 165 Iowa 415, 146 N. W. 58. The law is settled in Maryland that where an injury

or disease is of such a character as to require a person skilled in the science or practice of medicine to determine its cause, a medical expert may testify to his opinion thereof based upon his scientific knowledge and skill and upon personal observation or scientific deductions from given facts. *Armour & Co. v. Leasure,* 177 Md. 393, 407, 9 A. 2nd 572, 579; 2 *Jones on Evidence,* sec. 378; 20 *Am. Jur., Evidence,* secs. 862, 867. For instance, in a case where the question was whether a premature separation of a woman's placenta, which necessitated a Caesarian operation, had resulted from an automobile accident, Judge Parke, speaking for this court, said: "Her ailment was not of external appearance nor susceptible of apprehension by any of her senses; and the ascertainment of its cause, therefore, depended upon inferences and interpretations to be drawn and made upon the data observed by a skilled and qualified expert or furnished to him by herself and others. It was peculiarly within the province of medical science to ascertain the cause from which the illness requiring the operation arose, and whether it was produced by violance or disease." *Symington v. Graham,* 165 Md. 441, 447, 169 A. 316, 319. Since Mrs. Thompson's ailment was of such a nature that the jurors could obviously not be expected to determine the cause without the aid of expert advice, the doctor's opinion did not usurp their function. *Abend v. Sieber,* 161 Md. 645, 648, 158 A. 63.

It was urged by the appellants that, according to some medical authorities, retroversion and retroflexion of the uterus cannot be caused traumatically. However, Dr. Wallace asserted that, from his own experience in the practice of medicine, he had no doubt that displacement of the uterus can be caused by a violent injury. Dr. Thomas K. Galvin, of Baltimore, a specialist in gynecology and surgery, who was called as a witness by the defendants, likewise testified that he certainly did not deny that "a rare accident" could produce a displacement of the uterus. It is generally accepted that an expert witness should not be barred from expressing his opinion

merely because he is not willing to state his conclusion with absolute certainty. We adopt the prevailing view that the opinions of medical experts are admissible as to the cause which produced, or probably produced, or might have produced, a certain physical condition. *Barker v. Ohio River R. Co.*, 51 W. Va. 423, 41 S. E. 148, 152, 90 Am. St. Rep. 808; *Shaughnessy v. Holt*, 236 Ill. 485, 86 N. E. 256; *Denver & Rio Grande R. Co. v. Roller*, 100 Fed. 738, 752; 2 *Wigmore on Evidence*, sec. 656; 20 *Am. Jur., Evidence*, secs. 862, 867. The opinion of an expert as to the probability, or even the possibility, of the cause of a certain condition may frequently be of aid to the jury; for when the facts tend to show that an accident was the cause of the condition, the assurance of an expert that the causal connection is scientifically possible may be helpful in determining what are reasonable inferences to be drawn from the facts. *Kimmie v. Terminal R. R. Assn. of St. Louis*, 334 Mo. 596, 66 S. W. 2nd 561, 565; 7 *Wigmore on Evidence*, secs. 1920, 1976.

A further objection of the appellants was that the questions, which were asked Dr. Wallace, did not contain any hypothesis. The appellants cited *Quimby v. Greenhawk*, 166 Md. 335, 171 A. 59, where the court said that the admissibility of a hypothetical question depends primarily upon whether it furnishes the means of knowing upon what premises the conclusion is based. They also relied on *Mathiesen Alkali Works v. Redden*, 177 Md. 560, 10 A. 2nd 699, which held that a hypothetical question must contain every material fact in evidence essential to the formulation of a rational opinion. But in those cases the questions were purely hypothetical. In this case the opinion of the expert was formed from his personal observation. We follow the general rule that when a witness is called to express an opinion based upon personal observation, it is unnecessary to submit to him a hypothetical question before he can express his opinion. *Cumberland & Westernport Transit Co. v. Metz*, 158 Md. 424, 451, 149 A. 4, 565; *McClain v. Brooklyn City R. R. Co.*, 116 N. Y. 459, 460, 22 N. E. 1062;

*Lippold v. Kidd,* 126 Or. 160, 269 P. 210; *Heider v. Bar-endrick,* 149 Or. 220, 39 P. 2nd 957; 2 *Wigmore on Evidence,* sec. 675. Where a medical expert is familiar with the facts of an accident and the nature of the injuries, he is competent to testify whether the injuries were caused by the accident, without the necessity of having the facts in evidence recounted to him before he gives his opinion. It would be an idle and useless ceremony to require the evidence to be detailed in the form of a hypothetical question where the main facts are undisputed and the expert is entirely familiar with the facts. Furthermore, any details which the expert has personally observed can be elicited either on direct examination or on cross-examination, and these details can be associated with the other grounds for the general conclusion; and if it is discovered that any essential facts have been overlooked, the weight of his opinion will thereby be weakened or entirely destroyed. The opinion of an expert, the grounds upon which it has been formed, and the weight to be accorded to it are all matters for the consideration of the jury. *Davis v. State,* 38 Md. 15, 41; *Baltimore City Passenger Co. v. Tanner,* 90 Md. 315, 45 A. 188; *Louisville & Nashville R. Co. v. Rowland's Admr.,* 227 Ky. 841, 14 S. W. 2nd 174; 2 *Wigmore on Evidence,* sec. 675. Thus, in the case of *Marine v. Stewart,* 165 Md. 698, 168 A. 891, 892, where the expert witness had attended the plaintiff for injuries sustained in an accident, Judge Sloan said: "The doctor had more information than the most comprehensive hypothetical question could have furnished, and was qualified to express an opinion as to the cause and probable effects on the plaintiff of the accident complained of * * *, no question having been raised as to his qualifications." This court has also specifically held that an attending physician may express his opinion that a person probably had concussion of the brain in an accident, without first stating the basis for his opinion. *Mangione v. Snead,* 173 Md. 33, 45, 195 A. 329, 334.

Of course, where the evidence is conflicting or complicated by many details, or where the grounds upon which the witness is to base his opinion are not fully understood, it is proper for the trial court to require the facts to be submitted to him hypothetically, even though he had personal observation. *McCarthy v. Boston Duck Co.*, 165 Mass. 165, 42 N. E. 568. But where there is no dispute regarding the nature of the accident and the manner in which the plaintiff was injured, but the sole question is whether a certain condition was the result of the injury, then there is no impropriety in directly asking the attending physician to state what in his opinion had caused the condition. *City of Chicago v. Didier*, 227 Ill. 571, 81 N. E. 698; *Alexander v. Missouri State Life Insurance Co.*, 68 Fed. 2nd 1, certiorari denied, *Id.*, 292 U. S. 650, 54 S. Ct. 860, 78 L. Ed. 1499. In the case at bar there was no dispute concerning the details of the accident. The defendants did not deny the negligence of their servant. They admitted their liability for any personal injuries sustained by the plaintiff. The only controversy was the extent of the injuries. According to the record, Dr. Wallace attended Mrs. Thompson at the birth of her only child in 1935, and six weeks later found from an internal examination that her uterus was normal in size, shape and position. After the collision, he found that she had multiple bruises, which were very severe over the right thigh and insertions of the diaphragm, and soreness where the diaphragm is attached to the ribs. Between the date of the accident and the trial of the case he saw her a total of fifty-five times. Unquestionably he had sufficient personal knowledge of the facts to qualify him to express an expert opinion. It was immaterial whether he was present in the court room throughout the course of the trial. *Baber v. John C. Knipp & Sons*, 164 Md. 55, 163 A. 862.

As Dr. Wallace was qualified to testify as an expert in this case, and there was no conflict in the evidence as to the manner in which the accident happened, we find no objection to the admission of his opinion. The court

properly refused to instruct the jury that there was no evidence that the plaintiff had suffered retroversion or retroflexion as a result of the accident. The judgment in favor of the plaintiff must, therefore, be affirmed.

*Judgment affirmed, with costs*

BOND, C. J., and JOHNSON, J., dissent.