[No. 28875. Department Two. April 15, 1943.]

ALBERT CASE, *Respondent*, v. PETER PETERSON, *Appellant*.[1]

[1]Reported in 136 P. (2d) 192.

524

*Latcham, Skoog & Rickabaugh,* for appellant.

*George F. Hannan* and *Neal, Bonneville & Hughes,* for respondent.

GRADY, J.—Respondent, Albert Case, brought this action against the appellant, Peter Peterson, a widower, to recover damages as the result of coming in contact with an electrically charged fence which the appellant maintained upon his farm along the side of the public highway. In his answer, the appellant denied that he maintained the fence and alleged affirmatively that it was installed by his tenant; that, if the respondent did come in contact with the fence, he had

entered upon the leased land and was a trespasser, and, if he were injured, it was the result of his own negligence. The case was tried before the court and a jury. A verdict for the respondent was returned. Motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were denied, and judgment was entered against the appellant, who appealed to this court.

In 1938, appellant leased his farm to Edward R. Olson, reserving for his own use a five-acre tract, a dwelling house, and a chicken house. He continued to reside on the premises and to use the garage located near the dwelling house. After the tenant had taken possession of the leased part of the farm, he and appellant made an investigation as to the feasibility of constructing an electric cattle fence and of the amount of electric current it should carry. As a result, a fence was constructed along the public highway known as the "old road," which runs across the farm.

The fence consisted of a single strand of barbed wire strung along the tops of posts which were about three feet high. On the top of each post a loop of·rubber was fastened and the barbed wire ran through these loops. One end of the fence was connected with an electric current in the following manner: A .wire was connected with an electric line carrying 110 volts and ran to the garage used by appellant, then to a home-made device called a "switch block," consisting of a switch to break the current and two $7\frac{1}{2}$ watt globes, and from the switch block to the fence. The purpose of the globes was to reduce the current from 110 volts to a lesser voltage. The switch block was installed under the eaves of a roothouse. The electricity used was paid for by appellant, and he had assisted the tenant in the construction of the fence. In some places the fence was two or three feet from the edge of the

traveled portion of the highway and, in others, from ten to fifteen feet. The road intersects the main Mount Rainier highway. At the intersection there were some mail boxes, and a few feet down the "old road" was a signboard, approximately six by thirteen inches, hanging on the wire fence and with the words "electric fence" printed thereon in green paint. There was a similar sign about a thousand feet farther on, and others at various intervals.

On August 1, 1939, the respondent was riding in an automobile driven by one Martin Seeber along the Mount Rainier highway. Some motor trouble developed, and the driver of the car turned onto the old highway. He stopped the car about three or four hundred feet from the main highway. At this point, the fence was about two and a half feet from the edge of the traveled portion of the road. Between the edge of the shoulder of the road and the fence was a growth of grass. The time was about nine o'clock in the morning, and no rain had fallen recently. The morning had been foggy, the place was shady, and the grass was moist from dew. Respondent had gotten out of the car and stepped with one foot on the ground and the other on the grass. While in this position, he took hold of the wire with his right hand and felt a shock, which shook him, and he was unable to remove his hand from the wire. In a few minutes, the driver of the car took him by the coat and pulled him from the wire. It will not be necessary to detail or discuss the nature or extent of the injuries sustained by respondent, as no claim is made in this appeal that the verdict of the jury is excessive.

In his first and fourth assignments of error, the appellant claims that the court erred in its failure, after defining contributory negligence, to instruct the jury that, if it found that respondent was negligent and such

negligence caused or contributed to his injury, its verdict should be for the appellant, and that an instruction proposed by the appellant to this effect should have been given. The argument of the appellant is that the respondent saw, or by the exercise of reasonable care should have seen, the warning sign on the fence at or near the point where the automobile in which he was riding left the main highway, and, in view of this, he was guilty of negligence in contacting the wire, and such negligence was a contributing cause to any injury he may have sustained, and that, as the jurors were not told to find a verdict for the appellant if they found contributory negligence existed, they might have believed the respondent was negligent and still have rendered a verdict for him.

When the court instructs a jury on a subject such as contributory negligence, it should define the term and then advise what effect it should give to a finding that contributory negligence existed as a guide to the verdict it should render. *Gallup v. Pittsburgh Rys. Co.*, 295 Pa. 203, 145 Atl. 73; *Pawnee Farmers' Elevator Co. v. Powell*, 76 Colo. 1, 227 Pac. 836, 37 A. L. R. 6; *Frederick Cotton Oil & Mfg. Co. v. Travers*, 36 Okla. 717, 129 Pac. 747. The trial court was in error in not so instructing the jury.

If the question rested here, we think the appellant would have good cause for complaint, but, in view of other instructions given, the appellant was not prejudiced. Although he claims there is evidence tending to prove contributory negligence on the part of respondent, such as statements that he observed that the wire ran through rubber loops, that the wire sagged, and that it was "a funny looking fence," yet we do not think any or all of these facts indicate that the respondent assumed, or should have assumed, the wire was charged with electricity and, hence, should

not have touched it. The respondent testified that he did not observe the rubber loops until after he had received the shock. The only evidence in the record which the jury had to consider as bearing on the question of contributory negligence was that warning signs were hanging on the wire at certain places, and that the respondent either saw or, by the exercise of ordinary care, should have seen them and avoided the wire. This seems to have been the view of the trial judge, who gave the following instructions:

"INSTRUCTION No. 9. One who looks and did not see an object which plainly could have been seen will not be heard to say that he looked and did not see. The situation is the same as though he had looked and seen the object.

"If you find by a preponderance of the evidence that the electric fence was equipped with warning signs of such nature as to be readily and plainly seen, and that the plaintiff looked and should have seen the said signs, the law infers that he did see them and his subsequent actions are to be judged as though he had in fact seen them."

"INSTRUCTION No. 11. You are instructed that one may not cast the burden of his or her own protection upon another. Everyone owes himself the duty of self-protection and the law will not permit one to close the eyes to danger and if injured thereby, seek a remedy in damages. One is bound to use the intellect, senses and faculties for self-protection, and if you find in this case that the plaintiff failed so to do and that such failure was the proximate cause of his injury, if any, then the plaintiff cannot recover and your verdict must be for the defendant."

By these instructions the jury must have understood that, if the warning signs were of such a nature and so located as to be readily and plainly seen, it was then the duty of the respondent to have used his senses and faculties to protect himself from the charged wire, and, if he did not do so and such failure was the proximate

cause of his injuries, he could not recover, and the verdict must be found for the appellant. There is ample evidence in the record to warrant the jury in finding that the respondent was not guilty of contributory negligence.

The second assignment of error questions the propriety of instructing the jury upon the application of the doctrine of *res ipsa loquitur,* because the respondent pleaded in his complaint, and he submitted proof at the trial of the specific acts of negligence, that the fence was charged with electricity and no notice or warning was given that it was so charged. The argument of the appellant is that, if a plaintiff pleads and proves specific acts of negligence, showing clearly what caused the accident, then the doctrine of *res ipsa loquitur* does not apply, and to give an instruction thereon is prejudicial. The complaint in this case, while general in its scope, supplemented by evidence received without objection, warranted the court in giving an instruction upon this doctrine as well as upon the specific acts of negligence.

This court has adopted the rule that, even though a plaintiff should base his action upon the doctrine of *res ipsa loquitur,* he may plead and prove specific acts of negligence on the part of the defendant and rely upon the presumption of negligence and, also, upon his proof of specific acts of negligence in support of his right to recover. *Walters v. Seattle, Renton & Southern R. Co.,* 48 Wash. 233, 93 Pac. 419, 24 L. R. A. (N.S.) 788; *Kluska v. Yeomans,* 54 Wash. 465, 103 Pac. 819, 132 Am. St. 1121; *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 17 P. (2d) 631.

The reason for the rule we have adopted by these cases is that a plaintiff may not desire to rely wholly upon the presumption of negligence, but may wish to strengthen his case by proof of specific acts of negli-

gence so that, if the trier of fact should believe the presumption had been overcome by evidence submitted by the defendant, the plaintiff, if he has a cause of action, would, nevertheless, be entitled to recover upon his proof of the specific acts of negligence. The appellant cites and relies upon the case of *Anderson v. Harrison*, 4 Wn. (2d) 265, 103 P. (2d) 320.

In the *Anderson* case, there was a collision between an automobile and a bus. As the two approached each other, the automobile skidded in its descent down hill and swerved across the road and into the other traffic lane and the two vehicles collided. This court pointed out that the plaintiff relied upon definite causative facts, which excluded all inferences of a cause or thing which, unexplained, does not happen, according to common experience, without fault on the part of someone, and that, in such a case, the doctrine of *res ipsa loquitur* does not apply. We do not think this case is applicable to the situation now before the court, and therefore hold that the giving of the instruction was proper.

■ By his third assignment of error, the appellant complains that the court, in instructing the jury on the legal liability of one who maintains an electrically charged fence so close to a public highway that one lawfully using it may come in contact with the fence and of his duty to adequately warn the traveling public of the danger, added the following to instruction No. 8:

"What may be adequate warning under one set of conditions would not be adequate under another set of conditions, if you find such fence to have been built so close to said highway that one lawfully using said highway was likely to come in contact with the same, and that said warning was not adequate, as herein defined, then such failure constitutes negligence, and if you find that said warning was not adequate, you will likewise find that there was no contributory negligence on the part of the plaintiff, as there is nothing in the

evidence, independently of any warning the defendant might have given to draw to the attention of the plaintiff the fact that the fence was electrically charged."

The error claimed is that this added statement was a comment on the evidence, in that the jury was told, in effect, that there was no contributory negligence on the part of the respondent other than a failure on his part to see and observe the warning signs on the fence and to act accordingly.

The constitutional inhibition against judges commenting on evidence applies only to facts which are in dispute, and not to those about which there is no dispute or are admitted. As we have heretofore stated, the only evidence on the question of contributory negligence for the jury to consider in this case was whether there were adequate warning signs on the wire fence which the respondent either saw or should have seen if he had been exercising ordinary care. Therefore, the court was justified in holding and instructing the jurors that if they found that adequate warning was not given, then they should find that there was no contributory negligence on the part of the respondent.

The effect of the instruction was to withdraw from the jury the question of contributory negligence in the event that it found no adequate warning was given, and it was not a comment on the evidence to do so within the meaning of the constitutional provision. The principles announced in the following cases support the instruction complained of in view of the record: *Lownsdale v. Grays Harbor Boom Co.,* 36 Wash. 198, 78 Pac. 904; *Bunck v. McAulay,* 84 Wash. 473, 147 Pac. 33; *Thornton v. Eneroth,* 180 Wash. 250, 39 P. (2d) 379, 48 P. (2d) 1120; *McPherson v. Wakamatsu,* 188 Wash. 320, 62 P. (2d) 732.

The cases cited by appellant deal with situations where the trial judge, either during the course of the

trial or in instructions to the jury, did comment on the facts and evidence, but we do not consider them applicable here.

By his fifth, sixth, and seventh assignments of error, the appellant challenges the sufficiency of the evidence to support the verdict and urges that, in the alternative, he should have been granted a new trial.

While it is true that respondent was not corroborated as to the manner in which he received the injuries of which he complains, and a very substantial amount of evidence was adduced by the appellant casting doubt upon the respondent's claim that the electric current in the wire fence was of sufficient voltage to produce such a shock as would affect him as his evidence indicated, nevertheless the credibility of the witnesses and the weight to be given their testimony was for the jury to determine. It was justified in finding the existence of the facts above set forth, and we hold they are sufficient upon which to base the verdict.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, BEALS, and MILLARD, JJ., concur.