265 P.2d 1007

**XENAKIS et al.**
v.
**GARRETT FREIGHT LINES, Inc.**

**LIETZ et al.**
v.
**GARRETT FREIGHT LINES, Inc.**

**HATCH**
v.
**GARRETT FREIGHT LINES, Inc.**

Nos. 7974–7976.

Supreme Court of Utah.
Jan. 28, 1954.

300

E. L. Schoenhals, Salt Lake City, for appellants.

Stewart, Cannon & Hanson, Edward M. Garrett, Salt Lake City, for respondent.

CROCKETT, Justice.

Four claims for wrongful death and one for personal injury arise out of a collision between a Studebaker sedan and a Garrett Freight Lines truck. Just before dawn, October 19, 1951, the Studebaker was traveling northward on U. S. Highway 91; as it rounded a long curve a short distance south of Kanosh, Utah, it collided practically head-on with the defendant's truck which was going south. Four of the five occupants of the Studebaker were killed instantly and the other, Mrs. Connie Lietz, was severely injured.

These cases were consolidated for trial and are treated similarly on this appeal.

Pursuant to a jury's answers to interrogatories favorable to the defendants, the trial court entered judgment against the plaintiffs, who appeal. The errors complained of are as follows:

1. Failure to present to the jury the plaintiffs' theory of the case by refusal to give instructions concerning defendant's alleged negligence, particularly as to faulty brakes and their application;

2. Refusal to allow the jury to consider the right to recover on behalf of guest passengers notwithstanding negligence of their driver;

3. Adverse rulings on evidence;

4. Misconduct and abuse of discretion by the trial court;

5. Misconduct of opposing counsel.

1. From the inception of this case it has been plaintiffs' theory that the impact occurred on the Studebaker's right (east) side of the highway and that the defendant's truck went over onto its wrong (east) side. The jury rejected this contention and found to the contrary by its answers to the following questions:

Question No. 1: Do you find by a preponderance of the evidence in this case that the tractor or the Studebaker, or either of them, was negligently driven to the left of the center of the highway immediately preceding the collision involved in this lawsuit? Answer: Yes.

Question No. 2: If your answer to Question No. 1 is "Yes," name the vehicle

or vehicles which you so found were negligently driven across the center of the highway.

Answer: Studebaker.

 It is unquestioned that the impact occurred at terrific speed and the facts would not permit a finding that either vehicle was on its wrong side for any time or distance sufficient to permit the other driver any recourse to safety; both parties contend that the other went abruptly over onto his wrong side of the highway. The theory by which the plaintiff sought to place the blame on defendant's truck—the claimed failure of proper lookout, lack of control and alleged defective brakes—was calculated to demonstrate that a sudden application of the brakes made the truck veer to its left across the center line causing the collision. And that is the only possible manner in which such claimed negligence and faulty brakes could have had any effect in causing the accident. However, the photographs taken immediately after the accident showing debris and broken glass near the west edge of the highway, the tire marks leading from the Studebaker's side right into the debris, the testimony of the only eyewitnesses to the collision, two men traveling behind the defendant's truck in a pick-up, and that of the investigating officers, all tend to support the defendant's version: that the Studebaker was traveling at such a high rate of speed, about 80 miles per hour, as it came around the curve that its right wheels went out onto the gravel shoulder for about 200 feet after which it swerved across the highway to within three or four feet of the west edge of the highway into the path of the defendant's truck, indicating that it must have gone completely out of control as it rounded the curve just prior to the collision. While there was some evidence that it was defendant's truck which crossed over the center line, it was so tenuous that it is doubtful that it meets the requirements of "substantial evidence" under the rule set out in Seybold v. Union Pac. R. R. Co.[1] It seems that the jury was unquestionably right in its finding, but that is of no critical moment upon this review; the matter was submitted to the jury whose finding is now conclusive that it was the Studebaker which went onto the wrong side.

 The defendant's truck having remained on its own side, there was no factor of negligence on the part of the defendant which, even if found to exist, would have contributed to cause the accident. If the Studebaker had kept on its right side, as plaintiffs contend, the truck could have proceeded safely down its own right side of the highway with brakes ever so faulty, or with none at all, without any collision occurring. This being so, the other bases of negligence which might have caused the truck to go over on its

1. Utah, 239 P.2d 174.

wrong side are of no import, and likewise, failure of the trial court to instruct with respect to them could not be prejudicial to the plaintiffs.

█ 2. The fact that there was no negligence of the defendant contributing as a proximate cause of the collision, leaves the Studebaker's going over onto the wrong side as the sole proximate cause, therefore the court committed no error in refusing to submit the case to the jury on the theory that there could be recovery on behalf of the guest passengers for negligence of the defendant even though negligence of their driver may have also concurred in causing the wreck.

█ 3. The main evidentiary matter about which the plaintiffs find fault with the trial court relates to his insistence that Dr. Franklin S. Harris, Jr., a physicist called to testify as an expert concerning his interpretation of physical facts, should answer only hypothetical questions. Dr. Harris had inspected the scene and the vehicles some weeks after the collision and plaintiffs' counsel desired to have him base conclusions upon his observations. We are in accord with the generally recognized rule that when the material facts are within the expert's own knowledge and are related by him in his testimony, his opinion may be based upon such personal observations and knowledge, without necessarily having the facts hypothetically stat-

ed.[2] Yet it is obvious that the court and jury must be made aware of the facts upon which the expert bases his conclusion, otherwise the testimony would be of little assistance, and there would be no way of testing the validity of his opinions. Propounding the questions in hypothetical form would accomplish this purpose. Professor Wigmore has made an enlightening statement of this subject: "Questions * * * covering a scope which is not clear may always be excluded; much depending on the discretion of the trial judge. From this point of view it may sometimes be necessary to state hypothetically the data gained from the witness' personal observation; although in the ordinary case of that sort hypothetical presentation is not necessary." [3]

█ Dr. Harris' testimony as to what he observed some weeks after the collision would have been cumulative and stale at best. It was not made to appear that he knew or desired to testify to any fact other than those already in the record. We see no reason why plaintiffs' counsel could not ask hypothetical questions on facts in the light favorable to the plaintiffs as established by the evidence. Accordingly we fail to see any harm to the plaintiffs in requiring a statement of the premise upon which he based his opinion.

█ Plaintiffs also remonstrate against allowing defendant's counsel to, in effect,

2. 2 Wigmore on Evidence (Third Ed.) 796, Sec. 675.

3. Ibid, p. 805, Sec. 681(f).

"cross-examine" his own witness, James Faile. His testimony related to the very important question of the tire marks which, as shown by the photographs and testimony, lead from the Studebaker's side of the highway over onto the truck's side and into the debris. After cross-examination left some uncertainty in his testimony as to which car had laid down the tire marks, plaintiffs, in .an effort to impeach him, produced his signed affidavit that he could identify the tire marks as those of a Mercury car which drove up after the wreck, and which plaintiffs contend laid down such marks. Defendant was then permitted on redirect examination to ask leading questions in an effort to ferret out what his actual testimony was with respect to such tire marks. Plaintiffs say this was error under the rule that a party may not impeach or cross-examine his own witness. With this rule we are in accord, but there are exceptions. Jones in his Commentaries on Evidence[4] quotes with approval the following:

"There is no doubt that, where a party is surprised at finding that a witness believed to be favorable is in fact adverse, it is permissible to cross-examine the witness and to put leading questions to him, and the extent to which this may be done is, generally speaking, within the discretion of the presiding judge. * * *"[5]

And the same writer adds:[6]

"We find that the modern cases, particularly in this country, are practically in accord in holding that a party who is surprised by unfavorable testimony given by his own witness may interrogate such witness as to previous inconsistent statements made by him."

Supporting this view is the statement made by us in the case of Morton v. Hood:[7]

"We are of the opinion that when a witness had made statements on a prior occasion which would induce counsel acting in good faith to call such person as a witness, and when testifying such witness gives testimony materially different from the prior statement; the party so surprised and misled by such adverse testimony, under proper circumstances, should * * * be permitted to ask leading questions * * *."

The new Utah Rules of Civil Procedure indicate that considerable latitude of inquiry should be indulged to counsel who is surprisedly confronted by adverse testimony. Rule 43(b) states: "A party may interrogate any unwilling or hostile witness by leading questions. * * *" True, this rule does not expressly refer to redirect examination, but there is no sound

---

4. Vol. 6, (Second Ed.) 4806, Sec. 2429.
5. See Berkowsky v. New York City R. Co., 127 App.Div. 544, 111 N.Y.S. 989, 990.
6. Supra, 4807, Sec. 2430.
7. 105 Utah 484, 143 P.2d 434, 437.

reason why it should not cover such a situation, or any one in which a witness may unexpectedly prove adverse. Here the statement presented by affidavit purported to be inconsistent with the testimony counsel believed Faile would give, and which he had in fact given, on direct examination. There was therefore ample basis for counsel to be surprised by the development, and under the circumstances it was not an abuse of discretion to overrule objection to this "cross-examination" of Mr. Faile by defendant.

4. Plaintiffs also aver that in excluding evidence and making other rulings against him, the trial court was so high-handed and arbitrary that he created an impression unfavorable to plaintiffs' counsel, prejudicing their cause in the eyes of the jury and depriving them of a fair trial. In this vein they point to the fact that he granted their motion to exclude witnesses and yet permitted the defendant's truck driver to remain in the court during the trial. Where witnesses are excluded, it is common practice to allow one witness, having special knowledge of the facts, to remain in the court room to advise with counsel concerning the progress and management of the trial. It is not mandatory that this be done, but the entire matter of exclusion of witnesses rests within the sound discretion of the trial court and his action will not be disturbed in the absence of a showing of clear abuse. The record here shows that he expressly announced that the truck driver, Mr. Somsen, could remain in the court room, and no objection was then voiced by plaintiffs.

On the fourth day of the trial it was decided that the case could be completed most conveniently and expeditiously by holding an evening session of court. Plaintiffs' counsel indicts this as an imposition upon him and his cause; first, because it prevented him from procuring as a witness one Freeman who purportedly was an eye-witness to the laying down of the tire marks hereinabove referred to. This was certainly a critical issue of fact in the case and should have been presented upon counsel's main case rather than upon rebuttal. He had had ample notice of the date of trial and its progress; no showing was made that this witness had been subpoenaed, or that diligence had been exercised in an effort to procure him by the fourth day of trial. Second, plaintiffs charge that the holding of the night session, keeping the jury until 10 p.m., would lead the jury to blame him for the delay; and further, that due to their being tired and anxious to get home, they did not give fair and sufficient deliberation to the three cases. It is not apparent why plaintiffs' counsel should assume that the jury would blame him rather than the court or other counsel.

It is true that the court should exercise caution in seeing that juries have a fair and reasonable opportunity to give consideration to the issues submitted to

them. It would seem unwise, in view of all of the effort that goes into a lawsuit, the time and energy expended upon the pleadings, the investigation of facts, the procurement of witnesses and other evidence, and the use of several days of trial, to then submit a cause to a jury at such a late hour that they may feel under compulsion of the pressure of time, or other considerations, which would prevent them from making a full, fair and dispassionate analysis and determination of the matters entrusted to their judgment. Such matters of procedure likewise rest within the sound discretion of the trial court who should safeguard the rights of the parties in the interest of fair and equal protection of the law being accorded to both parties. We are not persuaded that the trial judge violated these precepts. Should it be assumed that he did so, it does not necessarily follow that such procedure adversely affected the plaintiffs.

Plaintiffs also make much of an incident when defendants objected to plaintiffs' counsel allegedly reading to a witness only part of a written statement made by him. The judge remarked: "Go ahead, Mr. Schoenhals; I say this to you [turning to the jury] if either of these lawyers reads you half a question, you might assume that they are trying to deceive you. That should be reason enough to you gentlemen [addressing counsel] that if you don't read all of the question they are going to think you are a stinker"; which plaintiffs' counsel says amounted to implying that he was a "stinker." The remark did not single out plaintiffs' attorney, but was the trial judge's method of giving an admonition to both.

With respect to the various matters charged as abuse of discretion and misconduct on the part of the trial court, it can fairly be said that such actions were not entirely exemplary; and that we do not give our approval thereto. But in affirming the judgment it is not necessary that we do so. It is our responsibility only to determine whether we believe that either alone or cumulatively the matters complained of were prejudicial to the rights of the plaintiffs to the extent that they were deprived of a fair trial.

Such matters are certainly not minimized by counsel who complain of them. It is hardly to be supposed that a trial would have been conducted to the satisfaction of losing counsel. None are so sensitive of the trial judge's frailties, nor so ingenious at finding prejudicial misconduct on his part as counsel who has just lost a case; contrarywise, none are so charitable and forgiving of his faults as counsel who has won and is defending him against such charges. We see no error or impropriety which would warrant reversal of the judgments and the granting of new trials.

5. The final matter to which we turn attention is plaintiffs' accusation against opposing counsel as to prejudicial misconduct: They charge in their brief

that in his argument he pointed to the defendant's driver and told the jury that he was "charged with the deaths of these parties" in an effort to elicit sympathy for the driver. This charge is denied by defendant, and inasmuch as there was no report of the argument, such statement is nowhere to be found in the record. If he desired to take advantage of it, it was the plaintiffs' duty to include it in the record.

Judgment is affirmed. Costs to respondent.

McDONOUGH and WADE, JJ., concur.

HENRIOD, J., concurs in the result.

WOLFE, C. J., does not participate.