Lawrence CRAWFORD, Appellant,

v.

Julia ROGERS, Appellee.

No. 546.

Supreme Court of Alaska.

Oct. 8, 1965.

————◆————

John D. Shaw, Palmer, Harold J. Butcher, of Butcher & Biss, Anchorage, for appellant.

John C. Hughes and Robert C. Erwin, of Hughes, Thorsness & Lowe, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellee's husband, A. O. Rogers, was killed in the crash of an airplane he was flying. The appellant was the only passenger, and was injured. He brought this action for damages for negligent maintenance and operation of the aircraft against appellee, as executrix of her husband's estate. The jury found in appellee's favor, and appellant has brought this appeal.

Appellant's principal contentions are that the trial court erred in permitting appellee's witness, Ward Gay, to testify as an expert on the cause of the airplane's crash, and in allowing Gay's testimony to be elicited without a hypothetical question having been propounded to him.

The aircraft involved was a tandem seat two place Aeronca Champion. At the time of the crash the pilot A. O. Rogers occupied the front seat and appellant occupied the rear seat. The airplane had dual controls—

that is, separate throttle, rudder and stick controls were available to the occupant of each seat except that the removable stick for the rear seat had been removed.

The plane had taken off from a lake. When it was about 150 to 300 feet in the air the engine sputtered for a moment and then resumed normal operation. Almost immediately after that, the plane made a sharp left turn in what appeared to witnesses to be an attempt to get back to the lake, went into a spin, and crashed nose down in the timber beyond the edge of the lake. At the time the aircraft went into a spin the engine had stopped. There was a conflict in the evidence as to whether the engine stopped running immediately before, at the same time, or immediately after the aircraft made the left turn.

The witness, Ward Gay, testified that in his opinion the crash was caused by the passenger, the appellant, pushing or stamping down on the left rudder pedal in the rear seat, which threw the airplane into a spin. The witness based his opinion on his observation of the scene of the crash and the wreckage of the aircraft, on his knowledge of how the accident happened and all the circumstances surrounding it, and on his personal experience as a pilot.

Gay had not personally observed the aircraft take off from the lake, turn left, and go into a spin; but stated that he had learned of this from what he had heard from other persons. The appellant contends that Gay's opinion was objectionable, because all the relevant data upon which the opinion was based was not within Gay's personal knowledge and had not been stated to him in the form of a hypothetical question.

■ The general rule is that when the facts upon which an opinion is based are not within the expert witness's own personal knowledge, such facts must have been supplied to the jury by other evidence and then presented to the witness hypothetically before his opinion may be received. The reason for the rule is that the witness's conclusion depends for its validity upon facts considered by him; and if the facts are not made to accompany the conclusion, then the jury would be asked to accept as evidence a conclusion which might not be supported by any evidence produced at the trial and which, therefore, the jury would have no basis for finding to be true.[1]

■■ The rule has no application when the reason for its existence is lacking.[2] That is the situation here. Relevant facts concerning the accident were that the airplane had taken off from a lake in a certain direction, that the engine had failed when the airplane had reached a certain altitude, that the airplane made a left turn in what appeared to witnesses to be an attempt to return to the lake, and that it had gone into a spin and had crashed nose down. These facts were not placed before Gay as part of a hypothetical question as to what in his opinion caused the crash. But those facts had been placed before the jury through the testimony of other witnesses. And it is reasonably clear from Gay's testimony that these were the same facts, taken together with his own personal observation, which constituted the premise upon which he based his conclusion as to the cause of the accident. The source of Gay's acquisition of such facts is not significant. There was given to the jury an opinion which the jury knew was based upon facts that had been placed in evidence. In these circumstances, there was no need for such facts to be stated hypothetically as a prelude to obtaining the witness's opinion.

1. Gilbert v. Gulf Oil Corp., 175 F.2d 705 (4th Cir. 1949). See Zerbinos v. Lewis, 394 P.2d 886 (Alaska 1964); 2 Wigmore, Evidence §§ 672–679 (3d ed. 1940); McCormick, Evidence § 15, at 32 (1954); Annot., 38 A.L.R.2d 13, 45–46 (1954).

2. Xenakis v. Garrett Freight Lines, Inc., 1 Utah 2d 299, 265 P.2d 1007, 1010 (1954); Langenfelder v. Thompson, 179 Md. 502, 20 A.2d 491, 494, 136 A.L.R. 960 (1941); Independent School Dist. No. 35 v. A. Hedenberg & Co., 214 Minn. 82, 7 N.W.2d 511, 520 (1943).

Appellant contends that Gay's opinion was inadmissible because it was based on conjecture—that it was the product of the witness's imagination.

Gay's conclusion that appellant had pushed down on the left rudder was not based solely on the fact that the plane had turned left and gone into a spin. This conclusion was also based on Gay's own personal experience as a game guide and pilot, where on at least two occasions a hunter riding in his airplane had gotten excited and shoved his foot down on the rudder pedal. A further basis for Gay's conclusion was his personal observation that the right rudder pedal in the pilot's seat was bent. He stated that this indicated to him that appellant had stamped down on the left rudder in the rear, and that the pilot in trying to overcome the effect of the left rudder had pushed down on the right front rudder pedal with such force as to bend that portion of the pedal that one places his foot upon.

█ We believe that the witness's opinion was a reasoned conclusion based on facts perceived and made known to him, and was not merely a fanciful notion conjured from unreality. Whether or not the opinion was a conjecture in the sense of being formed upon insufficient evidence, or was a reasonably accurate conclusion, was for the jury to determine. It was the jury's task to determine the proximate cause of the accident. The question faced by the trial judge was whether the jury, in making that determination, could receive appreciable assistance from the opinion of the witness, Gay.[3] In his discretion, the judge decided that the jury could receive such assistance.

█ We are unable to say that the judge was clearly mistaken—that he had abused his discretion in deciding that Gay's knowledge and experience were such that his opinion as to the cause of the accident would be of appreciable help to the jury in deciding that issue.[4] The witness, Gay, had been the owner and operator for about 22 years of Sea Airmotive, which operated a charter flying service and overhauled and maintained aircraft and aircraft engines and radios. He had been a pilot since 1939 and held commercial license ratings with both single and multi-engine aircraft, for land and sea. He had flown nearly all types of light airplanes including the type involved in this case. He held an airplane mechanic's license and was an authorized inspector of aircraft. In the course of his many years of flying, Gay had examined and investigated downed or wrecked aircraft on a number of occasions. He had made it a policy to try and determine the cause of every accident he looked at, not only for his own benefit as a flier, but also for the benefit of his employees and everyone in the aviation industry.

██ The record bears out the judge's decision that Gay's opinion as to the cause of the crash was within the scope of Gay's special knowledge, skill and experience. It does not detract from the soundness of the judge's decision that Gay had never been employed commercially or officially to investigate airplane crashes or that it was not shown that he was recognized by others as an expert on such matters. The true criterion in determining whether one qualifies as an expert witness and whether his opinion is admissible is not whether he employs his knowledge and skill professionally or commercially. The true criterion is whether the jury can receive appreciable help from this particular person on this particular subject.[5] The judge believed that the

3. Meyst v. East Fifth Avenue Service, Inc., Opinion No. 288, 401 P.2d 430, 438 (Alaska 1965); Oxenberg v. State, 362 P.2d 893, 900 (Alaska), cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961).

4. See Sanuita v. Hedberg, Opinion No. 296, 404 P.2d 647 (Alaska 1965).

5. Meyst v. East Fifth Avenue Service, Inc., Opinion No. 288, 401 P.2d 430, 438 (Alaska 1965); Oxenberg v. State, 362 P.2d 893, 900 (Alaska), cert. denied, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961); 7 Wigmore, Evidence § 1923, at 21 (3d ed. 1940).

jury could receive such help, and the record bears out that belief. There was no error in admitting into evidence the opinion of Ward Gay.

Appellant's next point is that the court erred in refusing to give the jury an instruction making the rule of res ipsa loquitur available to him.

Res ipsa loquitur means "the thing speaks for itself".[6] As a rule of law in an action involving an accident where a claim of negligence is made, it permits a jury, on the basis of experience or common knowledge, to infer negligence from the mere occurrence of the accident itself. The jury is permitted to conclude that such an accident would not ordinarily occur unless someone had been negligent.[7] As to a plaintiff's claim of negligence against a defendant, the rule will permit the jury to conclude further that the defendant was the one who was negligent if the evidence is such that reasonable men may say that it is more probable than not that it was the defendant, and not someone else, who was responsible for the occurrence of the accident.[8]

The proof by a plaintiff of specific acts of negligence on the defendant's part does not necessarily mean that the doctrine of res ipsa loquitur will not be available to the plaintiff. If such proof does not furnish a complete explanation of the accident, there may still be room for an inference of negligence arising from the happening of the accident.[9] But if the evidence discloses the circumstances of the accident to the extent that there is nothing left to infer, then the doctrine of res ipsa loquitur, which is founded upon inference, is no longer needed.[10]

The rule of res ipsa is unnecessary in this case. There was expert testimony to the effect that if a pilot attempts to make a 180 degree turn after the engine of his plane fails, it is most likely that the plane will go into a spin. What the pilot should do in those circumstances is to glide straight ahead and make an emergency or crash landing on the ground. The appellant, who was a passenger in the plane that crashed, testified that when the engine quit Rogers banked the plane to the left and tried to bring it back to the lake, and that as the airplane went into a turn the nose fell and the plane went into a spin.

If the jury believed appellant's testimony, they could find that Rogers had not acted as a reasonably prudent pilot would have acted under the same circumstances, and that he was therefore negligent; and that his negligence was the proximate cause of the accident which caused appellant's injuries. When the happening of the accident is as fully explained as it is here, it would be pointless and confusing to the jury to tell them that they may reach a conclusion that the accident must have been caused by the negligence of the defendant from the mere happening of the accident.[11]

---

6. Black, Law Dictionary, at 1470 (4th ed. 1951).

7. Prosser, Res Ipsa Loquitur in California, 37 Calif.L.Rev. 183, 191 (1949); Prosser, Torts § 42, at 202 (2d ed. 1955).

8. Denny v. Warren, 398 P.2d 123 (Or. 1964).

9. Lobel v. American Airlines, Inc., 192 F.2d 217, 219–220 (2d Cir. 1951), cert. denied, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952); Schneider v. United States, 188 F.Supp. 911, 914 (E.D.N.Y. 1960); Case v. Peterson, 17 Wash.2d 523, 136 P.2d 192, 195 (1943). Prosser, Res Ipsa Loquitur in California, 37 Calif.L.Rev. 183, 214 (1949). See

Furness, Withy & Co. v. Carter, 281 F. 2d 264, 265, 1 A.L.R.2d 636 (9th Cir. 1960).

10. Prosser, Res Ipsa Loquitur in California, 37 Calif.L.Rev. 183, 212–213 (1949); Evans v. Buchner, 386 P.2d 836, 837 (Alaska 1963); Schenderline v. Robertson, 394 P.2d 395, 396 (Alaska 1964). See Citrola v. Eastern Air Lines, Inc., 264 F.2d 815, 818 (2d Cir. 1959).

11. Citrola v. Eastern Air Lines, Inc., 264 F.2d 815, 818 (2d Cir. 1959); Patrick v. Sedwick, 391 P.2d 453, 456 (Alaska 1964); Schenderline v. Robertson, 394 P. 2d 395, 396 (Alaska 1964); Evans v. Buchner, 386 P.2d 836, 837 (Alaska 1963).

The court did not err in refusing to give appellant's proposed instruction on res ipsa loquitur.

Appellant's next contention is that the court erred in not granting appellant's motion for judgment notwithstanding the verdict.

There was some evidence tending to show that faulty maintenance of the airplane's engine caused it to fail during flight. There was evidence, which we have previously referred to, that Rogers was negligent in attempting a sharp left turn after the engine had stopped, instead of flying straight ahead and landing on the ground.

But there was more to the case than evidence of negligence on Rogers' part. The expert witness, Ward Gay, testified that in his opinion appellant had pushed on the left rudder pedal, throwing the plane into a sharp left turn and a spin. If this testimony were believed, the proximate cause of the crash would have been appellant's own fault, and not that of Rogers.

Appellant argues, however, that Gay's testimony was not worthy of belief. Gay reached the conclusion he did mainly from his observation that the right front rudder pedal was bent, and his opinion that this had been caused by the pilot putting pressure on the pedal in an attempt to overcome the effect of appellant placing pressure on the left rear rudder pedal. Appellant contends that the worth of Gay's opinion was obliterated when, in a courtroom demonstration where the fuselage of a similar aircraft was used, Gay was unable to bend the right front rudder pedal by applying pressure with his right leg and foot.

■ The strength and the effect of Gay's opinion as to the cause of the accident might have been lessened by the courtroom demonstration. But we do not believe that the value of his opinion was so diminished that the judge was required to disregard it and not let the jury decide the case. The jury reasonably could have believed that

there was a difference in the manner and the amount of force applied to the rudder pedal in a situation where a pilot was literally fighting for his life and in a situation where a witness was engaged in a courtroom demonstration. The jury also could have taken into consideration the fact that no other reasonable explanation of the bent pedal was suggested by the evidence at the trial. We believe that Gay's testimony was such that reasonable men could justifiably have different views as to whether the appellant himself had proximately caused the crash of the airplane.[12] There was no error in the judge's refusal to set aside the verdict and grant appellant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

■ What we have just said also disposes of appellant's contention that the court erred in allowing the jury to consider whether appellant was contributorily negligent. The testimony of Ward Gay constituted evidence of negligence on the part of appellant, and it was therefore proper to submit that question to the jury to decide.[13]

■ Appellant contends that the court damaged his case by suggesting to appellee's counsel, after appellant had asked his witness a hypothetical question and had received an answer, that had appellee objected to the question the objection would have been sustained. The incident referred to took place out of the jury's presence. We are unable to see how any prejudice resulted to appellant.

Nor can we see any merit to appellant's point that in returning a verdict for appellee, the jury disregarded or did not properly consider certain instructions relating to presumptions and burden of proof. Appellant's argument on this point appears to be nothing more than a reiteration of his contention that there was no probative evidence of contributory negligence on appellant's part. We have already held that there was.

12. McCoy v. Alaska Brick Co., 389 P.2d 1009, 1010 (Alaska 1964).

13. Saslow v. Rexford, 395 P.2d 36, 41 (Alaska 1964).

■ Appellant claims prejudice from certain alleged conduct of the trial judge. Appellant states that after his counsel had objected to certain testimony, the judge in an angry outburst uttered a derisive and contemptuous sound of disgust heard throughout the entire courtroom. At the request of appellant's counsel, during the hearing of arguments on this appeal, we listened to the electronic recording of the alleged incident. We heard nothing which bore any resemblance to that which appellant's counsel has described, or which could be construed as amounting to improper conduct on the part of the judge.

The judgment is affirmed.

RABINOWITZ, Justice (concurring).

Over forty years ago Judge Learned Hand characterized the hypothetical question rule as "the most horrific and grotesque wen on the fair face of justice."[1] This court's opinion may well signal the wen's obliteration.

Under the majority's decision the necessity of propounding a hypothetical question to an expert witness (not possessing personal knowledge) is obviated when the facts upon which the expert premised his opinion are reasonably clear to the jury. In my view, this court should have adopted a rule dispensing with the requirement of hypothetical questions in all instances, unless the trial judge in his discretion requires its use or counsel elect to use the hypothetical form.

The subject of hypothetical questions has been the source of considerable commentary. In discussing the future of the hypothetical question, Dean Wigmore stated:

Its abuses have become so obstructive and nauseous that no remedy short of extirpation will suffice. It is a logical necessity, but a practical incubus; and logic must here be sacrificed. After all, Law (in Mr. Justice Holmes'

phrase) is much more than Logic. It is a strange irony that the hypothetical question, which is one of the few truly scientific features of the rules of Evidence, should have become that feature which does most to disgust men of science with the law of Evidence.

The hypothetical question, misused by the clumsy and abused by the clever, has in practice led to intolerable obstruction of truth. In the first place, it has artificially clamped the mouth of the expert witness, so that his answer to a complex question may not express his actual opinion on the actual case. This is because the question may be so built up and contrived by counsel as to represent only a partisan conclusion. In the second place, it has tended to mislead the jury as to the purport of actual expert opinion. This is due to the same reason. In the third place, it has tended to confuse the jury, so that its employment becomes a mere waste of time and a futile obstruction.[2]

Dean Wigmore's solution to the problem is to exempt:

* * * the offering party from the *requirement* of using the hypothetical form; by according him the *option* of using it,—both of these to be left to the trial Court's discretion; and by permitting the opposing party, *on cross-examination*, to call for a hypothetical specification of the data which the witness has used as the basis of the opinion. The last rule will give sufficient protection against a misunderstanding of the opinion, when any actual doubt exists.[3]

Dean Charles T. McCormick, in reaching the same conclusion as Dean Wigmore, offers the following solution:

The only remaining expedient is the one generally advocated, namely, that of dispensing with the requirement that

1. Judge Learned Hand, New York Bar Ass'n "Lectures on Legal Topics" 1921–22 (New York 1926).

2. II Wigmore, Evidence § 686 at 812 (3d ed. 1940).

3. II Wigmore, Evidence § 686 at 813 (3d ed. 1940).

the question be accompanied by a recital of an hypothesis, unless the proponent elects to use the hypothetical form, or unless the trial judge in his discretion shall require it. It will be for the cross-examiner to bring out if he so desires, the bases for the expert's opinion.[4]

The views of Dean Wigmore and Dean McCormick are persuasive. In my opinion a rule similar to that urged by these authors and the other authorities referred to in this separate opinion would have been more appropriate.[5]

I concur with the majority opinion in all other aspects.

4. Charles T. McCormick, "Some Observations Upon the Opinion Rule and Expert Testimony," 23 Tex.L.R. 109, 129 (1945); See also McCormick, Evidence § 16 at 34 (1954). Rule 58, Uniform Rules of Evidence, provides:

Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge in his discretion so requires, but the witness may state his opinion and reasons therefor without first specifying data on which it is based as an hypothesis or otherwise; but upon cross examination he may be required to specify such data.

Rule 409 of the Model Code of Evidence reads at 210:

An expert witness may state his relevant inferences from matters perceived by him or from evidence introduced at the trial and seen or heard by him or from his special knowledge, skill, experience or training, whether or not any such inference embraces an ultimate issue to be decided by the trier of fact, and he may state his reasons for such inferences and need not, unless the judge so orders, first specify, as an hypothesis or otherwise, the data from which he draws them; but he may thereafter during his examination or cross-examination be required to specify those data.

Note also N.Y. Civil Practice Law and Rules, Rule 4515 (1963), which provides:

Unless the court orders otherwise, questions calling for the opinion of an expert witness need not be hypothetical in form, and the witness may state his opinion and reasons without first specifying the data upon which it is based. Upon cross-examination, he may be required to specify the data and other criteria supporting the opinion.

5. Note Dean Wigmore's assertion in support of his argument for abolition of the hypothetical question rule that:

No partial limitation of its use seems feasible, by specific rules. Logically, there is no place to stop short; practically, any specific limitations would be more or less arbitrary, and would thus tend to become mere quibbles. II Wigmore, Evidence § 686 at 812–813 (3d ed. 1940).