**TERRY'S SALES, INC., et al.,
Plaintiffs and Appellants,**

v.

**Henry VANDER VEUR 2d et al.,
Defendants and Respondents.**

No. 16563.

Supreme Court of Utah.

Sept. 12, 1980.

Roger P. Christensen of Christensen, Jensen, Kennedy & Powell, Salt Lake City, for plaintiffs and appellants.

David M. Bown, Salt Lake City, for Vander Veur.

Irving H. Biele, Salt Lake City, for Valley Bank.

John L. McCoy, Salt Lake City, for defendants and respondents.

CROCKETT, Chief Justice:

This case arose out of a dispute between two former partners in a used–car business about partnership assets and profits. The plaintiff, Terry's Sales, Inc., and its president, Terry West, sued for the assets and an accounting. The defendant, Henry Vander Veur 2d, claims that the parties had settled all of their differences by a settlement agreement requiring him to pay the plaintiff $3,350. From findings and judgment in favor of the defendant, plaintiff appeals.

In March of 1976 some difficulties had developed between these partners. Without going into undue detail, defendant Vander Veur acted upon what he regarded as just provocation to protect his interest in the partnership and its assets.[1] He withdrew $9,365 from the partnership checking account at Valley Bank and Trust Company, and took seven used cars to his home. One of them, a Plymouth Duster, he sold for $1,200.

When Terry West learned those facts, he filed a criminal complaint against Vander Veur, charging him with theft of the property. That proceeding was later dismissed, but West did get back the six automobiles.

Plaintiff West also filed an affidavit with the bank charging that Vander Veur had used forgery and wrongfully withdrawn the $9,365 from the partnership account. As a result, the bank credited the account with that amount, and Vander Veur turned that amount over to his attorney, John McCoy, to be held pending determination as to its ownership. Mr. McCoy placed the money in a trust account in the same bank, to be held subject to court order.

On April 12, 1976, West filed a civil complaint against Vander Veur alleging conversion of partnership property and fraudulent misrepresentation as to its accounts. He asked for an accounting and dissolution of the partnership. Shortly thereafter, on April 23, 1976, Vander Veur filed a separate action against West alleging derelictions in their partnership operations and charging libel, slander, false arrest, and malicious prosecution.

Those two cases were consolidated into the instant one, with West being designated as plaintiff and Vander Veur as defendant and counter–claimant. Trial was set for December 7, 1977. On November 23, 1977, the parties met at lunch where they had an extensive discussion concerning their mutual problems and the settlement thereof. They do not dispute each other that it was agreed that Vander Veur was to pay West

1. In reciting the facts, we assume that where the evidence is in dispute the trial court believed that which supports his findings. *Amer-* *ican Aggregate Corp. v. Otto Buehner & Co., et al.,* Utah, 528 P.2d 147 (1974).

$3,350, $350 down and the balance at $100 per month, without interest if all payments were made timely.

The controversy in the trial court and on this appeal results from the fact that the parties dispute each other as to whether the agreement just referred to settled all the differences between them, as asserted by defendant Vander Veur, and as found by trial court, or whether the amounts of the bank account of $9,365 and the $1,200 for the Plymouth Duster, previously received by Vander Veur, were to be returned to plaintiff Terry West, as he contends.

Plaintiff West's attorney, Richard Walker, was to prepare a written stipulation as to the settlement. After some communication between himself and Mr. McCoy, for the defendant, the stipulation was sent to the latter for Vander Veur's signature. He signed and returned it to Mr. Walker along with the initial payment of $350.

The position essayed by the plaintiff is that he objected to signing the stipulation of settlement because it made no mention of the $9,365 and the $1,200 which defendant Vander Veur had taken possession of as set forth above; and that he signed the stipulation upon Mr. Walker's assurance that it would not be filed until those sums had been transferred to him. The important fact is that, whatever his forebodings were, he accepted the payment, and he signed and returned the stipulation.

Because of his concern about the dispute as to who was entitled to the $9,365 which he held in his trust account, Mr. McCoy instituted an interpleader action naming plaintiff West, defendant Vander Veur, and Valley Bank as claimants, and asked an adjudication as to ownership. On February 2, 1979, at a pre-trial conference held before Judge G. Hal Taylor on that action, it was disclosed to the court and stipulated to by the parties that the instant actions were

pending in which ownership of the fund was an issue to be determined. In recognition of those facts, the court entered judgment that the fund should be returned to the partnership account in Valley Bank and frozen (held intact) pending determination of ownership by the court.

Upon a trial of the consolidated actions, Judge Peter F. Leary found the facts in accordance with defendant Vander Veur's version of the evidence and ruled that the settlement the parties had agreed on should be deemed to settle all of their claims against each other.

In attacking the findings and judgment, plaintiff urges: First, that the order made in the interpleader action directing that the $9,365 fund be returned to the partnership account was a determination adverse to defendant Vander Veur's claim;

Second, that there is not a sufficient basis in the evidence to justify a finding that the settlement was of all claims between the parties; and

Third, that in any event, the trial court committed reversible error in ordering the exclusion of Mr. Richard Walker, West's attorney, from the courtroom during the trial, except when he was called to testify.

### Interpleader Action

An action in interpleader is a proceeding in equity in which a person who has possession of money or property which may be owned or claimed by others seeks to rid himself of risk of liability, or possible multiple liability, by disclaiming his interest and submitting the matter of ownership for adjudication by the court.[2] If the action accomplishes the purpose for which the plaintiff instituted it, it is not necessarily a requisite to its termination that it decide all of the issues between the adverse claimants.[3] It does not appear that Judge Taylor made any adjudication as to the claims of

2. See Rule 22, U.R.C.P.; and 48 C.J.S. Interpleader § 2.

3. See Nunnelly et al. v. First Federal Building and Loan Ass'n et al., 107 Utah 379, 159 P.2d 141 (1945). See also 45 Am.Jur.2d Interpleader § 35 (1969); and 3A Moore's Federal Practice

§§ 22.02 and 22.14 (2d Ed. 1979). But it is recognized that in appropriate circumstances there may be such further adjudication in the interpleader action, see Gossner v. Dairymen Associates, Inc., Utah, 611 P.2d 713 (1980).

plaintiff West and the defendant Vander Veur as between themselves. He simply recognized that that controversy was pending for resolution in this action; and ordered that the fund be held in the bank until that was done. Accordingly, the judgment in the interpleader action had no res judicata effect upon that dispute.[4]

## Sufficiency of Evidence

The contention plaintiff makes that his settlement agreement with defendant Vander Veur did not encompass his claim for the return of the bank account of $9,365 and the $1,200 for the Plymouth Duster in practical effect amounts to an argument that his version of what occurred is more credible than that of the defendant. The major obstacle to his successful urgence of that position is the standard rule that the credibility of witnesses and of the evidence is for the trial court to determine.[5]

■■ There are other considerations which support the view adopted by the trial court. Where parties have various claims and obligations to each other, and have had a discussion about resolving their disputes which results in a written agreement signed by them, it is generally to be assumed that their disputes were merged into the written agreement.[6] That principle seems to harmonize with the court's view of the evidence in believing that the parties either did or should have dealt with all of their claims in such a document. The same can be said about the fact that Terry West signed the settlement agreement and accepted the initial $350 and several subsequent payments thereon.

## Exclusion of Witness

Plaintiff's final point is that exclusion of all witnesses from the courtroom constitutes reversible error since that order required his attorney, Richard Walker, to be excluded. He asserts that it was Mr. Walker who represented him in the settlement negotiations, wherefore he had special knowledge both as a witness and as to how the case should be presented.

It is significant that Mr. Raymond A. Hintze was the attorney actively handling the trial for the plaintiff. Upon the invocation of the exclusion of witnesses, he named the witnesses he intended to call, including Mr. Walker. After some discussion, · the court stated that inasmuch as Mr. Walker was to be called as a witness, he should be subject to the same exclusion order as the other witnesses.[7]

■■ In regard to the matter of excluding witnesses, we make several observations. Whether and to what extent witnesses should be excluded is generally within the prerogative of the trial judge, and he should be allowed considerable latitude of discretion in making such orders.[8] His actions thereon should not be disturbed on appeal unless it clearly appears that he abused his discretion; and in any event, a judgment should not be overturned unless it appears that the ruling was prejudicial.[9] More specifically, as to whether Mr. Walker should have been permitted to remain in the courtroom: The provisions of our Code of Professional Responsibility indicate that, when it is known that the testimony of an attorney will be of importance in a trial, it is not well advised for him to participate as trial counsel.[10] It seems obvious that an attorney who is a witness as to important

---

**4.** See *Adams v. Davis*, 107 Utah 579, 156 P.2d 207 (1945).

**5.** See *Pollesche v. Transamerican Ins. Co.*, 27 Utah 2d 430, 497 P.2d 236 (1972).

**6.** That written contracts are deemed to merge prior discussions, see *E. A. Strout Western Realty Agency, Inc. v. Broderick*, Utah, 522 P.2d 144 (1974); *Lamb v. Bangart*, Utah, 525 P.2d 602 (1974).

**7.** As permitted by Rule 43(b), U.R.C.P.

**8.** See *Xenakis v. Garrett Freight Lines*, 1 Utah 2d 299, 265 P.2d 1007 (1954).

**9.** Id.

**10.** See Utah Code of Professional Responsibility, Disciplinary Rule 5–102, which so provides and notes certain exceptions not applicable here.

issues in a trial, and also attempts to participate as counsel, puts himself in what would seem to be an embarrassing position of having to contend for the credibility of his own testimony.[11]

 Notwithstanding what has just been said, we make the further observation that inasmuch as an attorney is an officer of the court, the court can place special reliance upon his integrity and responsibility to it, as well as to his client, wherefore we think it would have been quite proper to allow Mr. Walker to remain in the courtroom. However, even if it should be assumed that Judge Leary abused his discretion and that he should have permitted Mr. Walker to remain in the courtroom, there is a consideration even more important insofar as the justice of this case is concerned. From anything we are able to perceive, Mr. Hintze made a competent and complete presentation of the plaintiff's case, including the testimony of Mr. Walker. Accordingly, we do not see any such prejudice to the plaintiff as would warrant upsetting the findings and judgment.

Affirmed. The parties to bear their own costs on appeal.

MAUGHAN, WILKINS and HALL, JJ., concur.

STEWART, J., concurs in result.

11. See Ethical Consideration, Canon 5, Comment 9 of the Utah Code of Professional Responsibility.