AMERICAN AGGREGATE CORPORATION, a corporation, Plaintiff and Appellant,

v.

OTTO BUEHNER & COMPANY, a corporation, and Paul Beuhner, Defendants and Respondents,

v.

D. W. BRIMHALL, Additional Defendant on Counterclaim and Cross-Complainant.

No. 13478.

Supreme Court of Utah.

Oct. 31, 1974.

---

2. State v. Coyle, 41 Utah 320, 126 P. 305.

3. State v. Talarico, 57 Utah 229, 193 P. 860.

**148**

Paul E. Reimann, Salt Lake City, for plaintiff and appellant.

Clifford L. Ashton of Van Cott, Bagley, Cornwall & McCarthy, Thomas A. Duffin, Salt Lake City, for Buehner.

John E. Runyan, Salt Lake City, for Brimhall.

ELLETT, Justice:

The plaintiff, hereinafter referred to as American, appeals from a judgment dismissing its complaint after a five-day trial to the court sitting without a jury.

There is no dispute in regard to the following matters:

1. Rigby had filed on land under the mining laws of the United States and was doing assessment work thereon.

2. Rigby leased the land to American and was to receive $1.50 per ton royalty for all quartz aggregate mined and sold, and American was to do the assessment work.

3. The mineral on the claim was a unique white quartzite used in making concrete slabs for use in buildings.

4. American contracted with Brimhall to mine and crush the quartzite and to pay $10 per ton out of cash received when and as sales were made.

5. Buehner Company knew of the above arrangements and had bought aggregate from American on prior occasions.

6. Buehner Company had a contract to furnish slabs in connection with a large building being erected.

7. The architect had specified the unique quartzite to be used by Buehner.

8. Buehner tried to purchase from American but would not agree to pay $29.-50 per ton.

9. Thereafter Buehner went to Brimhall and entered into an agreement with him to buy the aggregate at $20.50 per ton f. o. b. Buehner's plant.

The trial court found that Brimhall was a joint venturer with plaintiff and as such was authorized to act as agent and to make the contract to sell the rock at the price of $20.50 per ton. It further found that plaintiff, by reason of the action of its officers, ratified and accepted the agreement as made.

Our duty is to affirm the trial court if there is competent evidence in the record to sustain the finding.[1]

The appellant vigorously disputed the evidence upon which the court relied, but we cannot say there was no credible evidence to support the finding.

Mr. Brimhall was called as a witness by the plaintiff and testified that he operated under an unsigned written agreement drawn up by counsel for American where-

1. DeVas v. Noble, 13 Utah 2d 133, 369 P.2d 290 (1962); Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

by he was to mine and crush the quartzite and was to be paid $10 per ton therefor, that American was to haul the material sold and was to be paid $8 per ton for hauling, and that $1.50 per ton was to be paid as royalty to Rigby and the profit, if any, made from a sale was to be divided between American and Brimhall.

The defendant Paul Buehner was called as a witness and testified about a phone conversation with the president of American as follows:

Q Now, would you tell the Court when that conversation occurred and where?

A It took place on the phone prior to the time—just prior to the time we issued the purchase order.

Q Now, you tell me what was said by you and what was said by Mr. Reimann?

A I told Mr. Don Reimann that we had a purchase order with Mr. Chidester and that if we were going to change it we had to know immediately because Mr. Chidester had to get the aggregate out, and if he was—if he were going to negotiate with him on the price of 20.50 that I had to know now. He said he didn't want to do it, and I said can I work it out with Mr. Brimhall and he said yes. You go ahead.

Mr. Buehner testified that he had another telephone conversation with Don Reimann as follows:

Q Now, will you tell the Court in your own words what was said by you and what was said by Mr. Reimann— Don Reimann?

A He called and said we would accept the price on the aggregate which has been discussed, which was 20.50. And he also said that he would like to have us help him with the use of our models and molds on the oxen at the reduced price.

\*　\*　\*　\*　\*　\*

Q Now, say what was said in that conversation?

A And we—I agreed to reduce the price for the use of the oxen and the molds—that is the molds and the models at that time; and we came to the agreement then that he would have those at the reduced price and we agreed on the price for the aggregate.

Q Now, did you subsequently produce those oxen—the molds for the oxen?

A Yes.

Q And did he use them?

A Yes.

Q How much did it cost for you to have the oxen prepared for the molds or to get the molds ready for him?

A Well, we had agreed on a price of $2,000 for the use of the molds and the models; and I spent an additional $1,200 to produce additional models from the molds.

Q If he had not got those oxen and molds from you, where would he have had to go to get them?

A My estimated cost would be $9,000 to $10,000 to get them from another place.

■ If the trial court was convinced that Brimhall and Buehner were telling the truth, he was within his rights in finding as he did. Each of those witnesses was a party to the action, and the court was not compelled to believe what they said. However, the fact that they were parties would only go to the credibility of their testimony and would not render their testimony incompetent. The court apparently thought that they were telling the truth. We are obliged to respect his prerogative of believing whom he pleased in this matter, and we, therefore, affirm the judgment as made. Respondents are entitled to costs.

CALLISTER, C. J., and HENRIOD, CROCKETT and TUCKETT, JJ., concur.